## STATE OF CONNECTICUT.

---

### COUNTIES OF NEW LONDON AND WINDHAM.

#### MARCH TERM, 1870.

#### Present,

PARK, CARPENTER, PHELPS AND LOOMIS, JS.*

---

## NATHANIEL L. LESTER vs. CHARLES H. KINNE AND ANOTHER.

The respondent authorized an agent to negotiate for the sale of certain lands belonging to him, among which was a lot known as the Potter lot, and to sell the same on his consent. The agent agreed by parol to sell the lands, including the Potter lot, and the respondent received the money for the same, and held the same when, some time after, a demand was made upon him by the purchaser for a conveyance of the Potter lot, and still retained the same. The respondent however did not know at the time he received the money that the Potter lot was included by the agent in the sale; and on the trial denied that it was so included except upon certain conditions not complied with by the petitioner. Held that the agreement of the agent for the sale of the Potter lot was neither authorized nor ratified.

Held also that the payment of the money to the respondent was not such a part performance as to take the case out of the statute of frauds.

---

Judges PHELPS and LOOMIS of the Superior Court were called in to take the places of Judge HINMAN, deceased, and Judge BUTLER who was ill.

Where a decree required the respondent to execute a conveyance to the petitioner or to such person as he should designate, and the agreement found by the court was that the respondent should convey to one *L*, whose relation to the petitioner did not appear, it was held that the decree was erroneous.

A petitioner in equity must have some legal or beneficial interest in the subject of controversy involved in the suit, and which may be affected by the decree.

BILL IN EQUITY to compel the conveyance of certain real estate, brought to the Superior Court in New London county and tried before *Minor, J.* The court made the following finding of facts :

On the 10th day of September, 1866, the legal title to one of two tracts of land described in the petition was in the respondent Kinne, and an undivided half of the equitable title, and the other half of the equitable title was in Coon, the other respondent; and at the same time Kinne and Coon were the owners in fee of the other parcel of land called the "Potter Lot," which is about a mile distant from the first described tract, and is flooded by reason of a dam erected by the Griswold Paper Company on the first mentioned tract.

Previously to the 1st day of October, 1866, certain persons, and among them the petitioner, who subsequently composed the stockholders of the Griswold Paper Company, were desirous of organizing the company, and were ready to do so if the premises in question could be purchased; and to ascertain whether the same could be purchased the petitioner entered into negotiation with the respondent Kinne.

About the 1st of October, 1866, the petitioner made an oral agreement with Kinne, for the purchase of both parcels of land for the sum of $7,333, the first parcel in fee, and the right of flowage of a certain portion of the Potter lot to be conveyed to the Griswold Paper Company, if the company should thereafter be organized, and when organized, and the fee of the Potter lot, subject to such right of flowage, to be conveyed to Nathan B. Lillibridge, the value of which was about $100, upon the payment by the petitioner of the expenses and the cost of the revenue stamp for the deed to Lillibridge; and Kinne then agreed by parol with the petitioner to convey in fee simple the first described tract and also the right of flowage of a certain portion of the Potter

lot to the Griswold Paper Company, if and when the company should be organized, and to convey the fee of the Potter lot, subject to the right of flowage, to Lillibridge, the petitioner to pay the expenses, upon the payment of $7,333.

Afterwards the Griswold Paper Company was organized, and in pursuance of the agreement, and in part performance of the same, Kinne conveyed to them by a sufficient deed, dated Oct. 20th, 1866, the first mentioned tract, and both Kinne and Coon, pursuant to the contract, and in part performance of the same, by a sufficient deed, dated Oct. 31, 1866, conveyed the right of flowage of a certain portion of the Potter lot to the company, and the company paid the respondents the sum of $7,333.

The company immediately thereafter entered into possession of the first mentioned tract and erected thereon a dam and suitable buildings to carry on the manufacture of paper, by means of which dam the water was thrown back upon and flowed the Potter lot. Kinne resided at Voluntown, near the premises, and Coon at Norwich, some distance therefrom. The final meeting of the parties to make arrangements for the execution of the deeds, and the payment of the $7,333, was at Norwich. Both the petitioner and Kinne were present. Coon was not present, but he and Kinne had interviews at the time about the matter, and the petitioner supposed that Kinne was fully authorized by Coon to make the agreement to convey the premises. Both Kinne and Coon refuse to convey the fee of the Potter lot, subject to the right of flowage, to Lillibridge.

The petitioner caused a proper deed to be prepared and tendered the same to Coon for execution, about a month before the service of the present petition, up to which time Coon had no knowledge, and did not suppose that the sale by Kinne included the fee of the Potter lot, and Coon refused to execute the same. Afterwards and before the service of the petition, the petitioner caused the deed to be presented to Kinne for execution, who refused to execute the same, claiming, as the respondents also contended on the trial, that the Potter lot was not to be included in the sale except upon certain other conditions not performed by the petitioner.

It appeared from the evidence, and the court found, that Coon authorized Kinne to negotiate for the sale of the premises, and to sell the same on his, Coon's, consent, and that Coon never expressly authorized him to sell the fee of the Potter lot, nor in any way authorized the sale, or assented to the same, unless his authority and assent were to be inferred from the foregoing facts, and particularly from the following further facts, which the court found: that Coon resided at Norwich, where the final arrangements for the sale were made, and at that time had interviews with Kinne; that the petitioner thought when making the agreement that Kinne had full authority from Coon to make the same; and that Coon conveyed a portion of the premises and received his pay not only for the portion thus conveyed but also for the fee of the Potter lot, and had the same in his hands when the deed was tendered to him for execution, and still had the same in his hands.

The court passed a decree for a specific performance by the respondents, ordering them, under a penalty, " to execute and deliver to the petitioner, or to whom he may designate, a deed which shall convey all their interest in the land described in the aforesaid agreement, known as the Potter lot, conveying the same free of all incumbrances except the right of flowage heretofore conveyed by them to the Griswold Paper Company."

The respondents brought the record before this court by a motion in error.

*Holbrook* and *Lucas*, for the plaintiffs in error.

*Wait* and *Bolles*, for the defendant in error.

Loomis, J. The decree of the court in this case enforces the specific performance of a parol contract for the sale and conveyance of the fee of certain land described in the record as the "Potter Lot."

We consider the decree erroneous, for the following reasons.

1. It compels Coon, one of the respondents, to perform an agreement which he neither made nor authorized to be made.

It was claimed by the petitioner that Coon made the agreement through Kinne, the other respondent, who acted as his agent. If Kinne had any authority from Coon to make an agreement in his behalf, it must be derived from the following facts as found by the court: "It appeared from the evidence, and is found, that said Coon authorized Kinne to *negotiate* for the sale of said premises, and to sell the same on his, said Coon's consent, and that the said Coon never expressly authorized him to sell the fee of said Potter lot, nor has said Coon ever authorized said sale of the fee of said Potter lot, or assented to the same, unless his authority and assent may be inferred from the foregoing facts, and particularly from the following: that said Coon resided at Norwich, where the final arrangements of said sale were made, and at that time had interviews with said Kinne; that the petitioner thought, when making said agreement, that said Kinne had full power and authority from said Coon to make the same; that said Coon has conveyed a portion of said premises and has received his pay, not only for that conveyance, but also for the fee of said Potter lot, and had the same in his hands when said deed was tendered to him for execution, and still has the same in his hands."

It seems from the above that the only authority in fact given by Coon to Kinne was to *negotiate for the sale* of the land in question, but not to sell except upon Coon's *consent*, to be given after Kinne, by such negotiation, should have ascertained the terms upon which such sale could be made. If any other authority was given, it must be inferred and implied from the facts stated, but none of the facts referred to have any particular significance upon the question of agency, except the statement " that said Coon has conveyed a portion of said premises, and has received his pay not only for that conveyance, but also for the fee of said Potter lot, and had the same in his hands when said deed was tendered to him for execution." This fact would doubtless amount to a full ratification and adoption of the act of Kinne in making the sale, and would be conclusive upon Coon, provided only that the latter had previous knowledge of the material facts of

the transaction. But the court finds expressly, that "until within a month previous to the service of the petition Coon had no knowledge, and did not suppose, that the sale by Kinne included the fee of the Potter lot." The whole foundation for any agency by subsequent ratification is thus utterly taken away, and it is clear that there was no authority, express or implied, in Kinne, to include the fee of the Potter lot in the sale. Coon in giving a deed of the right of flowage to the Griswold Paper Company, and in receiving his portion of the money, had no knowledge, nor suspicion even, tnat the sale by Kinne included the fee of the Potter lot, and he was not so informed till about five months after the transaction. He had executed the agreement in every particular, just as he understood it, and had received the money belonging to him for what he had actually conveyed.

2. The foregoing facts not only show that there was no agreement made by Coon, but also show that if a parol agreement had been made there could not have been any such part execution of the contract as would deliver the case from the statute of frauds.

The acts done in part performance, in order to take the case out of the statute, must be such as are necessarily to be imputed to the agreement, and should be done solely with a view to the identical agreement being performed that is sought to be enforced. The acts of Coon therefore could have no effect as part performance beyond the terms of the agreement as he made and understood it.

3. The decree also is erroneous in that it seeks to enforce a contract essentially different in its terms from the contract proved in evidence.

The decree requires the respondents "to execute and deliver to the petitioner, or to whom he may designate, a deed which shall convey all their interest in the land described in the aforesaid agreement, which was purchased by them of Elisha Potter, and known as the Potter lot, conveying the same free of all incumbrances, except the right of flowage heretofore conveyed by them to the Griswold Paper Company."

The agreement which the court finds the respondents made, was " to convey the fee of the Potter lot, subject to the right of flowage, to Nathan B. Lillibridge." There is no provision whereby the petitioner, or any person by him designated, can obtain the title from the respondents. It is a conveyance to Lillibridge and to no one else. The agreement therefore, as actually made, instead of being enforced specifically by the decree, is utterly defeated by it, in that it gives to the petitioner, Lester, or to some other person whom he may designate, that which belongs to Lillibridge, if to any one besides the respondents.

4. Another objection to the decree is, that Lester, in whose favor it was obtained, does not appear to have any interest in the subject of the suit, or any right to the thing demanded. The most that can be inferred from the facts as found by the court is, that the petitioner was a mere agent of the Griswold Paper Company, to whom the deeds already executed have been delivered, and who have paid the entire consideration for the land.

The relations of the petitioner and Lillibridge are not at all disclosed, nor is any reason suggested for giving the fee of the Potter lot to the latter.

There is nothing on the record to indicate that either of the two parties really interested demand anything more of the respondents than they have already received, and nothing to show that the present suit is prosecuted by the petitioner for their benefit. We consider it a well established principle in chancery, that the plaintiff must have some legal or beneficial interest in the subject of controversy involved in the suit, and which the decree may affect. *Crocker* v. *Higgins*, 7 Conn., 342, Story's Eq. Pl., (Redfield's Ed.,) §§ 76*a*, 231, 231*a*, 236.

We are of opinion that there is manifest error in the decree complained of and it is reversed.

In this opinion the other judges concurred.