EMMA J. VAN EPPS *vs.* JOHN R. REDFIELD, ADMINISTRA-
TOR, ET AL.

First Judicial District, Hartford, March Term, 1897. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The acts of part performance relied on to take an oral agreement concern-
　　ing real estate out of the statute of frauds, must not only be consistent
　　with the existence of such agreement, but inexplicable upon any other
　　reasonable hypothesis.
Whether the facts proved in a given case meet this requirement is a ques-
　　tion of law reviewable by this court on appeal.
The facts in the case at bar considered and *held* insufficient to take the
　　case out of the operation of the statute.

[Argued March 2d—decided March 23d, 1897.]

SUIT praying that the title to certain real estate might be
vested in the plaintiff, brought to the Superior Court in Hart-

ford County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants for alleged errors in the rulings of the court. *Error and judgment reversed.*

The case is sufficiently stated in the opinion.

*Charles E. Perkins* and *John C. Parsons*, for the appellants (defendants).

The finding of the trial court is objectionable, in that instead of finding the facts which were proved and drawing deductions of law from them, which could have been revised by this court, it attempted to consider these questions of law as facts, and thereby deprive the defendants of any opportunity to have those questions revised by this court. The legal rules as to cases like this, asking for specific performance of such an agreement, are well settled in *Patterson v. Bloomer*, 35 Conn. 63, and other cases. They are, that "applications of this character are addressed to the discretion of the court, and must be fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy, and free from fraud, surprise, or mistake." All these requirements are legal and necessary to granting a decree, and the court below cannot make them ultimate facts, which it can pass upon without revision. They are not laid down as mere suggestions to the lower court, which it may follow or not, at its pleasure, but are statements of the law, which, if the lower court does not follow, its decision cannot be sustained. *Lester v. Kinne*, 37 Conn. 12; Pom. on Specif. Perform. §§ 121–136 ; *Andrew v. Babcock*, 63 Conn. 121. Taking all the evidence on the subject, the contract set up in the complaint was not proved so clearly, accurately, and definitely that this court, in its discretion, will enforce it. The possession of the plaintiff was not exclusive. Pom. on Specif. Perform. § 121. The claimed agreement was against public policy and void. 1 Story's Eq. §§ 296–298; 22 Amer. & Eng. Ency. of Law, 10–14; *St. Louis R. R. v. Terre Haute Co.*, 145 U. S. 393; *Batty v. Chester*, 5 Beav. 103; *Ayerst*

v. *Jenkins*, Law Rep. 16 Eq. 275; *Drennan* v. *Douglas*, 102 Ill. 341; *Wallace* v. *Rapalye*, 103 id. 229.

*William B. Stoddard* and *Sylvester Barbour*, for the appellee (plaintiff).

Where the contract is certain, equal, fair, and founded on a valuable consideration, then the court is bound to decree a specific performance. Story's Eq. Juris., §§ 714, 747, 775; *Quinn* v. *Roath*, 37 Conn. 24; Browne on the Stat. of Frauds, §§ 448, 448*a*, 457*a;* Pom. on Specif. Perform. § 104; *Pope Manufg. Co.* v. *Gormully*, 144 U. S. 237. The defendants claim that the plaintiff did not prove her case by clear and conclusive evidence. This claim raises no question of law. *Conn. Hum. Soc.'s Appeal*, 61 Conn. 465; *Whitman* v. *Winchester Repeating Arms Co.*, 55 id. 247; *Hall* v. *Gaylor*, 37 id. 552; *Hayt* v. *Parks*, 39 id. 360. There is no uncertainty about the possession which the court below finds the plaintiff took and held. Her possession is not weakened by the fact that Wasserbach used the barn. *Potter* v. *Mather*, 24 Conn. 551. What the nature of the plaintiff's possession was, is a question of fact and its determination by the trial court is conclusive. *Howe* v. *Keeler*, 27 Conn. 557. The question of public policy was settled by the decision of this court when the case was here before. 68 Conn. 48. Laches will not bar a plaintiff's recovery, if the delay has worked no injury to the defendant. *Ætna Bank* v. *Hollister*, 55 Conn. 213; Pom. on Specif. Perform. § 404; *Todd* v. *Weber*, 95 N. Y. 186. The defendants request this court to review the evidence. It was for the trial court to decide what the evidence proved, and this court will not interfere with that finding. *Styles* v. *Tyler*, 64 Conn. 441, 461; *Neilson* v. *Hartford St. Ry. Co.*, 67 id. 466.

FENN, J. The present action was before this court on demurrer to the complaint, upon the plaintiff's appeal, at a former session. *Van Epps* v. *Redfield, Admr., et al.,* 68 Conn. 39. It was sent back for trial to the Superior Court,

which, upon hearing, rendered judgment for the plaintiff, and now the defendant has appealed.

The suit was brought to compel the specific performance of an oral agreement relating to real estate. Concerning said agreement, the finding is that John C. Wasserbach, the defendant's testator, resided in Hartford, in 1875, and there became acquainted with the plaintiff. In 1877 an illicit relationship began between them and continued down to within one year of his death, which occurred in September, 1895, during all of which period Wasserbach had a wife living, as the plaintiff knew. In 1878 a girl was born of this illicit intercourse, but subsequently died. On May 20th, 1884, a boy was born of such intercourse. About three months before the birth of said boy, Wasserbach took the plaintiff to New York to be confined, and paid the expenses of her confinement. About two months before such birth, said Wasserbach and the plaintiff orally agreed that in consideration of the plaintiff's supporting and maintaining said boy, always at her own expense, the said Wasserbach would purchase and convey to her the premises described in the complaint. The court finds that Wasserbach did subsequently purchase the premises; a portion of them, namely, the lot on which the dwelling-house stood, in September, 1885, and the balance, being two vacant lots adjoining, in April, 1887. In making such purchases Wasserbach took title in his own name, but this, the court finds, was "in pursuance of his said agreement." It is found that the plaintiff has always maintained, supported and educated said boy at her own expense, in fulfillment of said agreement, and on her part has fully kept her agreement; that many times since the purchases the said Wasserbach has been requested by the plaintiff to give her a deed of these premises, and as often has promised to do so, but kept putting her off. He died, having the title in his own name.

The court, in the memorandum of decision, states that the essential fact that the plaintiff agreed to support the child at her own expense, if Wasserbach would deed to her the premises, rested upon the plaintiff's statement. The court

then adds: "That he agreed to deed the premises there can be no doubt, and, corroborated as this woman's story is, on all sides, and uncontradicted, I must find that she speaks the truth when she says the consideration of these premises was to be her support and maintenance of the child."

But this is purely an oral agreement, within the statute of frauds, which a court of equity cannot enforce unless, indeed, there has been a sufficient part performance to relieve the case from the operation and bar of the statute. Concerning this, it was the claim of the plaintiff, sustained by the court below, that the plaintiff's possession of the premises, in the manner found by said court, was sufficient to relieve the case from the statute. This brings us to a controlling question.

The finding of the court in regard to possession should, we think, for clearness, be divided into two parts. The first relates to facts and visible indications; the second, to claims by the plaintiff, admissions by Wasserbach, and conclusions by the court. Concerning the former, it is found that immediately after each of the purchases above stated, Wasserbach delivered, and the plaintiff entered into, possession of the premises, and has ever since occupied them, using a part as a residence for a time, and thereafter using the entire property as a residence with her boy. In the year 1893, Wasserbach erected a barn at a cost of $2,000 upon one of the lots. He used this barn in common with the plaintiff. He included the property in his tax lists, had it insured in his own name, paid the repairs, water bills, tax bills, insurance, cost of barn, and clearing snow. "He loved and cherished the boy greatly until the day of his own death, and recognized and received him as his own child, and always treated him as such." He contributed of his own accord somewhat to the support, education and maintenance of the boy. The amount is not stated. The plaintiff expended some money on the premises. That amount also is not found.

The other part of the finding bearing upon possession is, that all through the negotiations for said purchases of real estate Wasserbach kept the plaintiff fully informed of his progress in the purchases; informed her that he had made

them for her, and that they were hers, to be a home for her
and the boy; that in pursuance of said agreement she en-
tered into and took possession under a claim of ownership;
that at all times she claimed ownership to all the property,
which was known, recognized and assented to by said Was-
serbach, and never denied by him; that the barn was erected
by Wasserbach for the plaintiff's benefit, and not for his own;
that her possession of the premises "continued as it began,
and was exclusive." It is found that Wasserbach charged
the entire property with rent, but the plaintiff never paid
him any rent. He included it in his annual inventories.
In his last inventory he stated he owed no man anything.
But saying this, the court adds: "During all of the time Was-
serbach was making these changes, and doing these acts, he
regarded, considered, and treated this property as that of the
plaintiff." And, finally, the court concludes: "The deliv-
ery to the plaintiff of these premises, and its continuance, in
the manner she held them, can be reasonably and naturally
accounted for by the existence of an agreement, as hereto-
fore described, and in no other way."

The court, in arriving at the conclusion that the case dis-
closed a sufficient part performance to take it out of the oper-
ation of the statute of frauds, relied, as appears from the
memorandum of decision, upon the authority of *Andrew* v.
*Babcock*, 63 Conn. 109, 120–124. Certainly, if the court was
right in its final finding or inference above stated,—that the
possession was of such a character as to be naturally and rea-
sonably accounted for by the existence of the agreement
named, or indeed by any valid contract to convey title, and
in no other way,—such reliance was correct; otherwise it
was not. In that case the possession was of such a character
as to be sufficient, consistent with the principles there stated
at considerable length (p. 120–122), namely, in brief, a pos-
session that indicated a contract, a new fact, or condition,
"an open and visible change of possession under the con-
tract." Not to quote at greater length from our so recent
decision, the doctrine which we there recognized and applied
is that stated and held in many authorities, to one only of

which, but that of the highest rank, we will refer, as giving
in clear terms both the rule and the reason upon which it is
based.   In Pomeroy on Specific Performance, §§ 154, 155, it
is said : " A plaintiff cannot, in the face of the statute, prove
a verbal contract by parol evidence, and then show that it has
been partly performed.   This course of proceeding would be
a virtual repeal of the statute.   He must first prove acts
done by himself, or on his behalf, which point unmistakably
to a contract between himself and the defendant which can-
not in the ordinary course of human conduct be accounted
for in any other manner than as having been done in pursu-
ance of a contract, and which would not have been done with-
out an existing contract.   And although these acts of part
performance cannot of themselves indicate all the terms of
the agreement sought to be enforced, they must be consist-
ent with it, and in conformity with its provisions, when these
shall have been shown by the subsequent parol evidence.   It
follows from this invariable rule that acts which do not un-
mistakably point to a contract existing between the parties,
or which can reasonably be accounted for in some other man-
ner than as having been done in pursuance of such a contract,
do not constitute a part performance sufficient in any case to
take it out of the operation of the statute, even though a
verbal agreement has actually been made between the par-
ties.   The rule is general in its application, and fundamental
in principle, that acts which are referable to something else
than the verbal agreement, and which may be ordinarily other-
wise accounted for, do not constitute a sufficient part per-
formance of it."   See also Fry on Specific Performance,
§ 380 ;  Bispham's Eq., § 385 ; Sugden on Vendors (14th ed.),
§ 152 ;  Browne on Frauds (2d ed.), §§ 455, 457, 472, 473,
477 ;  Wood on Landlord and Tenant (2d ed.), 374, and
cases cited.

Returning to the case before us, and considering the appli-
cation to it of the principles above stated, we will say first,
that the finding of the court referred to,—that the delivery
of possession to the plaintiff of the premises, and its continu-
ance, in the manner she held them, can be reasonably and

naturally accounted for by the existence of an agreement, as stated, and in no other way,—should not, as we think, be regarded as the finding of a fact by the trial court, in its exclusive province, binding on us, and which it is not within the limits of our jurisdiction to review. What is thus found neither adds, nor purports to add, anything to the facts of the case. It does not prove the oral agreement. Its object is to remove the operation of the statute, and so permit it to be proved. Doubtless such acts were allowed to have such effect because of their tendency to corroborate, render probable, and indicate the facts of such agreement. But while that is the clear reason for the relaxation of the statutory bar in this manner, and while only such acts as do so indicate have such effect, yet the relevancy of such a finding as the present is that what is stated furnishes a reason, if correct, why a parol contract relating to real estate can be enforced despite the statute, and not because it itself supplies an agreement or furnishes evidence of one. If the finding of a trial court of this nature were not the subject of review, the application of the rule above quoted from Pomeroy, adopted and applied by this court in *Andrew* v. *Babcock*, *supra*, would pertain exclusively to such trial court. Such cannot be the case.

In the present action, that such an agreement was indeed made, as the plaintiff testified to, the court has found, and that finding must stand. Whether it is of validity, in face of the statute, to support the suit and warrant recovery, is entirely a different question, the reply to which depends upon the further consideration now before us. We ought perhaps to say that in addition to what the finding discloses, our attention has been called to the evidence in the case. We were asked by appropriate proceedings to correct the finding as made, so as to more fully present the questions of law sought to be raised by the defendant, and especially the one now under consideration. For this purpose the entire evidence adduced was certified, and has been carefully read and considered. It cannot be denied that there are certain matters shown by that evidence, matters upon which the

plaintiff herself testified and concerning which there was no dispute, difference, or question, which might have an important bearing, at least in explanation and apparent modification of what the court below stated in the finding concerning the exclusive possession of the premises by the plaintiff, her claims of ownership, the recognition of such claims by Wasserbach, and the corroboration of the plaintiff's story by other evidence. But without considering this, and taking what appears in the finding alone, we are unable to concur in the view expressed by the trial court to which we have just referred. It seems to us that starting, as Pomeroy says, not with the oral agreement, but with acts done by the plaintiff, or in her behalf, which point unmistakably to a contract between herself and Wasserbach, which cannot in the ordinary course of human conduct be accounted for in any other manner,—starting thus, and pursuing an undeviating path, the evidence fails to reach the point where sufficient progress has been made to warrant the introduction of the oral agreement. Possibly this case illustrates the adage that a good deal depends upon the right start. How would the case appear if viewed in that way? Would any one seeing Wasserbach and the plaintiff cohabiting as man and mistress from 1877 to 1894 or 1895; knowing him to be the father of her girl born in 1878, and of her boy born in May, 1884; knowing that they were "the only children he ever had; that he loved and cherished the boy greatly until the day of his own death, and recognized and treated him as his own child, and always received him as such;" that after the birth of the boy he had, as the finding further states, hired and fitted up a home for the mother in Hartford, kept her there a year, then put her in another house of his own, fitted up for her, then after some months had transferred her and the boy to another house which he had bought, the one in question, the title to which for ten years thereafter he kept in his own name, insuring it, paying taxes on it, making repairs, clearing snow, building a barn costing $2,000 on the premises, doing in short all that has been detailed;—would any one, knowing and seeing all this, but without the benefit of the plaintiff's own story, have been led to infer from these indications that

there was,—that in the ordinary course of human conduct there must have been,—a contract between the plaintiff and Wasserbach, by reason of which it was his duty to convey to her the title to such real estate, in consideration of the fact that she had agreed to support, and was supporting, always at her own expense, the child which Wasserbach had called by his own name, who lived in his house, on premises which, if they were, as the court finds, in the exclusive possession of one of the child's parents, were also at the same time in the common occupation of both? Who would have said that here, under such conditions as these, were acts, all or any of which could not be referable to anything else than some such agreement as that claimed and found; for a lawful and not for an illicit consideration and purpose; acts which would not have been done without an existing contract for such virtuous and correct end ? And who, approaching the case in this way, would have reached the conclusion of the court below—stated and reached, as indeed it must have been, after plaintiff testified—that not only a reasonable and natural, but the only reasonable and natural way of accounting for such acts, facts and possession, was by virtue of a contract which was made presumably in New York, while the plaintiff was there waiting for her confinement with her second child, at Wasserbach's expense, two months before the child was born, when the result could hardly have been forecast in all particulars ; that in consideration of her supporting and maintaining said boy always at her own expense, he would purchase, first in his own name, but then convey to her, the premises described? We do not think such a conclusion could be reached in such a way. If a similar claim were put forward by a real wife instead of an acting one, against the estate of a deceased husband, the same facts concerning possession, as those detailed, would tend, we think, quite as strongly, if not more so, to indicate the truth of the claim. And yet we cannot believe that it would be permissible to remove the bar of the statute in such a case, in that way. We have neither the right nor the desire to go further at present than this and other courts have already gone, in

removing the prudent and wise prohibition of the statute of frauds and perjuries. The paths that would open out by such removal would not be those of safety.

When the present case was before this court at the former hearing (68 Conn. 39), it did not appear upon the face of the pleadings, which was all we then had to consider, whether the plaintiff relied upon a verbal contract, or not, and we were unable therefore to decide the question, then somewhat fully discussed, whether upon the facts alleged, if verbal only, sufficient part performance was shown so that it could be enforced. But we then went to the limit of what we deemed warranted by the case as then presented, in the quotation and suggestion that " specific performance of a verbal contract affecting real estate will not be decreed, except upon due and conclusive proof of its existence and terms, and that the contract must be certain, equal and fair, founded upon a valuable as distinguished from a merely good or moral consideration ; and that so proven, it is not a matter of right, but of sound discretion." And we added, perhaps thinking it might have some significance, as expressing our views, that "such claims as the present, are always dangerous, and when they rest on parol evidence they should be strictly scanned."

It is worthy of mention that the agreement found by the trial court differs sufficiently from the allegations in the complaint, as it came before us at the former hearing, so that, as the record shows, the present judgment is based upon an additional count, filed by way of amendment after the evidence was in fact heard, and to correspond with such evidence.

There are other grounds assigned as errors by the defendant, in the reasons of appeal, which do not appear to be wholly without foundation. But we have not deemed it essential to examine them specially, owing to the result reached upon the point which we have considered.

There is error in the judgment appealed from, and it is reversed.

In this opinion the other judges concurred.