ISAAC L. COHEN *vs.* PAINE, WEBBER & COMPANY.

First Judicial District, Hartford, May Term, 1931.
MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 7th—decided June 1st, 1931.

*Josiah H. Peck* and *Jacob Schwolsky,* for the appellant (plaintiff).

*Robert P. Butler* and *Arthur E. Howard, Jr.,* for the appellee (defendant).

HAINES, J. The defendants were stockbrokers conducting business in Hartford, and early in 1929, the

plaintiff opened an account with them for the purpose of trading in stocks at which time he introduced to them his business associate, Steinberg, as his agent and representative, expressly stating to them that he was authorized to trade with the defendants for and on the plaintiff's account. For about ten months thereafter and up to November 21st, 1929, Steinberg did most of the trading for the account of the plaintiff, and some of the stocks so bought were delivered to Steinberg who receipted for them for the plaintiff, and others were delivered to a bank where they were taken up by the plaintiff. While most of the transactions were the customary transactions in securities listed on the New York and other stock exchanges upon which the usual brokerage commission was charged, there were a considerable number of transactions in stocks owned by the defendants and sold outright to the plaintiff, known as "over the counter" sales. All transactions, whether purchases or sales, were immediately confirmed in writing to the plaintiff, and regular monthly statements of the account were sent to him showing all the items of his account during the preceding month and the debit and credit balance on the defendants' ledger at the close of business at the end of each calendar month. The plaintiff has sought to secure a change of finding from the trial court to the effect that the plaintiff maintained separate accounts with the defendants, only one of them being a margin account. This is conclusively refuted by the exhibits and the evidence produced by the defendants, and there was no error committed by the trial court in refusing to so change the finding. Exhibit 5, being a transcript of the defendants' ledger account with the plaintiff for September and October, shows conclusively, even without the clear confirmatory testimony of defendants' witnesses, that there was

but one account maintained with the plaintiff by the defendants, as the trial court found. Upon this account were entered all the transactions of the plaintiff with the defendants. On October 11th, 1929, the defendants were carrying certain stocks for the plaintiff which were charged to him on his account and upon which he maintained a "margin," the balance on his account on that day being sufficient to cover the then required margin. Being advised of this fact by the defendants, his agent Steinberg on that day purchased from the defendants for the plaintiff's account, twenty-five shares of the Bank of Manhattan new stock on a "when issued" basis, at $273 per share. This transaction was oral, no writing evidencing the sale being executed by the parties, but a written confirmation of the sale was forwarded to the plaintiff the same day by the defendants and was duly received by him. The plaintiff was informed by the defendants and understood that this stock would be paid for "when issued," that is, when ready for delivery, and in the meantime he would be required to maintain a thirty per cent margin on the purchase price, but interest would begin to run against his account only from the delivery date. On November 11th, 1929, the stock was ready for delivery and the defendants notified the plaintiff of that fact, and on that day charged the plaintiff's account the purchase price of the stock, $6825, interest beginning to run on the amount from that date. Two days thereafter, in response to the defendants' demand that he take delivery of the stock, the plaintiff appeared personally at the defendants' office and paid $300 on his account and asked for and was granted a delay of a few days to pay the additional amount of cash necessary to take up this stock and remove it from his account. The plaintiff had proposed to arrange with his bank to take up the stock, but that arrangement failed,

up to November 20th, 1929, and the plaintiff likewise failed to make further payments on his account. On October 11th, 1929, when this stock was purchased for the plaintiff, the margin on his account, in which he was carrying other stocks, was sufficient as these stocks were then quoted, to maintain the thirty per cent margin which he was required to maintain on the Bank of Manhattan stock, but about a week thereafter a rapid decline in prices of the plaintiff's stocks so reduced the margin on his account that the defendants made repeated demands for further payments on the account. In response to these demands, the plaintiff paid the defendants for the credit of his account, $1000 October 19th, $300 October 24th, $500 November 4th, $300 November 7th, and $300 November 13th. Monthly statements were rendered to the plaintiff by the defendants during this period showing all these stocks and all items of debit and credit on his account. Printed on these monthly statements, as shown by Exhibit B in evidence, was the following: "It is understood and agreed that all securities carried in this account may be loaned by us or pledged by us in our general loans, may without further notice to you be borrowed and used in making deliveries on account of sales or orders by other customers, and may be sold or bought at public or private sale, without notice when such sale or purchase is deemed necessary by us for our protection."

Not only did the plaintiff make the payments referred to, and receive the monthly statements without protest, but from the time the Bank of Manhattan stock was purchased, October 11th, to November 20th, he did not disclaim the purchase of this stock, and with full knowledge of its purchase and of the fact that it was charged to his account, he, on November

8th, bought fifty shares of Rossia Insurance Company stock of the defendants for $2540.

The decline in prices had so reduced the margin on the account of the plaintiff, that on November 21st, owing to his failure to make further payments to them, the defendants sold the securities which they were carrying for the plaintiff and credited the proceeds to his account which then left a balance due them from him of $1084.77. This action was taken in conformity to the terms upon which the account was maintained and which were printed on the monthly statements as above indicated.

Reference has already been made to the effort of the plaintiff to procure a change of finding to show that he had two separate accounts with the defendants rather than one, but that claim is refuted by the evidence. The plaintiff also alleged in his complaint and reiterated in his draft-finding, that he had never bought the Bank of Manhattan stock from the defendants, and he denied the authority of Steinberg to make the purchase for him as his agent. The evidence likewise refuted these claims, and when the trial court found explicitly, in paragraph three of the finding, that Steinberg did so act, no attempt was made to correct that paragraph. The plaintiff likewise contended and asked for a finding that the defendants kept the transaction relating to the Bank of Manhattan stock "separate and apart from any of the other transactions which they had with the plaintiff" and that the payments he made on account were "in no wise applied, even in part on the Bank of Manhattan transaction." These and other changes of less importance form the basis of numerous reasons of appeal. The evidence put before us to support these claims, fails to do so, and in our judgment the findings of the trial court, particularly in regard to these more

vital matters, are not only supported but are required by the evidence. These and most of the minor changes sought are based upon conflicting evidence, some of which the court says explicitly "I do not believe." A careful examination of all these requests discloses none of importance, which we can grant, and the facts as above summarized from the finding must stand. As thus established they dispose of some of the reasons of appeal which are based upon the assumption that changes would be made. However, upon the facts as found, the plaintiff contends that the defendants acted illegally in selling out his securities in accord with the provisions of Exhibit B printed thereon, to the terms of which the plaintiff had acquiesced; and that the Bank of Manhattan purchase was within the statute of frauds and so the plaintiff was not legally chargeable with this stock, and finally that there was error in the admission of evidence in two instances.

An examination of the record shows that the first claim of law was not made at the trial, except as incident to the second claim, and it is therefore not properly before us as such upon this appeal. *Crane* v. *Hartford-Connecticut Trust Co.,* 111 Conn. 313, 317, 149 Atl. 782; *Nemoitin* v. *Berger,* 111 Conn. 88, 149 Atl. 233; *Rindge* v. *Holbrook,* 111 Conn. 72, 149 Atl. 231; *Pyskoty* v. *Sobusiak,* 109 Conn. 593, 145 Atl. 58; *Cone* v. *Cullen,* 108 Conn. 126, 142 Atl. 674. We may add, however, that the claim, if properly presented, could hardly be sustained upon the facts as they stand.

The argument of the plaintiff upon the question of the statute of frauds, is based upon the assumption that the stock of the Bank of Manhattan was in a separate account from the plaintiff's other stocks, and so his payments on account did not apply on this stock to take the contract for its purchase out of the statute. The situation is identical with that in a case

in Massachusetts, where the court there said: "The master found that the stock was rightly included by the defendants in the plaintiff's general account and that the payments made by the plaintiff were made generally on account and were applicable to this stock as well as to other stocks." *Berwin* v. *Bolles,* 183 Mass. 340, 341, 67 N. E. 323.

The established facts make it clear that the plaintiff acquiesced in the purchase of the Bank of Manhattan stock for his account and agreed and unsuccessfully attempted, to get his bank to take it up for him, and in response to demands for payment on his account in which this stock stood, he made part payment. His present claim, that the purchase was not taken out of the statute and was thus unenforceable, cannot be sustained.

Adjudications upon the subject of what constitutes part performance of an oral contract sufficient to remove it from the requirements of the statute of frauds, are not in harmony, but they appear to support one of two rules. One of these is that the claimed acts of part performance must be referable to the very contract set up and to no other, while the other is that the acts are sufficient if they are such as to clearly refer to some contract in relation to the matter in dispute, and the terms may then be established by parol. We have adopted and consistently adhered to the second and more liberal rule in numerous decisions in this State. *Rienzo* v. *Cohen,* 112 Conn. 427, 429, 152 Atl. 394; *Harmonie Club, Inc.* v. *Smirnow,* 106 Conn. 243, 247, 137 Atl. 769; *Bradley* v. *Loveday,* 98 Conn. 315, 319, 119 Atl. 147; *Verzier* v. *Convard,* 75 Conn. 1, 7, 52 Atl. 255; *Van Epps* v. *Redfield,* 69 Conn. 104, 110, 36 Atl. 1011; *Grant* v. *Grant,* 63 Conn. 530, 539, 29 Atl. 15.

The questions of evidence presented by the final

reasons of appeal do not assume any importance in view of the facts established and the law applicable thereto which we have considered, and any discussion of them would now be academic.

There is no error.

In this opinion the other judges concurred.