[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this action, Robert A. Hall, Jr., a practicing attorney in Stamford, is suing his former client, the defendant Jerald L. Pullins. Sentinel Service Corporation (Sentinel), a Delaware corporation located in Stamford, of which Pullins is chief executive officer and a director, was originally also a defendant, but was later dropped as a party.
The complaint as amended is in two counts. The first count alleges that Pullins reneged on a promise to transfer 10,000 shares of class B common stock of Sentinel to the plaintiff Hall. Sentinel was formed in January, 1985, by Pullins and Saugatuck Capital Company (Saugatuck), a limited partnership, who are the company's major stockholders. The purpose of Sentinel was to own and operate nursing homes and funeral establishments. Hall alleges in his complaint that he performed legal services for Pullins in several matters, including a review of various proposed agreements between the stockholders in connection with the organizing of Sentinel. The plaintiff claims that in lieu of legal fees, Pullins agreed in the fall of 1984 to sell him 10,000 of Pullins' shares of Sentinel in return for a promissory note for $1771, which he delivered to Pullins on June 9, 1986.
Hall further asserts that in July 1987, Pullins told him that he CT Page 3701 could not sell him the 10,000 shares because the Stockholders Agreement dated May 1, 1985, and amended and restated as of June 25, 1985, required approval of both of Sentinel's major shareholders before any of its stock could be sold, and that Saugatuck, which held the majority of shares, refused to permit Pullins to sell his stock. According to the complaint, this conduct by Pullins breached his agreement to sell 10,000 shares to the plaintiff.
The second count claims that Pullins' conduct in promising and then refusing to sell the 10,000 shares to plaintiff constituted fraudulent misrepresentation.
Plaintiff seeks an order directing Pullins to transfer to him the 10,000 shares of Sentinel, or to pay an equivalent amount of money. Hall claims the stock is worth approximately $6 a share, and he also seeks prejudgment interest.
The defendant filed several special defenses, including a claim that the approval of the sale by Sentinel's stockholders was a condition precedent, which condition was not fulfilled. Pullins also contends that the statute of frauds, General Statutes 42a-8-319, requires that a contract to sell securities be in writing in order to be enforced. In addition, Pullins asserts a special defense of accord and satisfaction on the basis that Pullins made complete and final payment to Hall in 1987 for all legal services rendered. Pullins also claims estoppel and "unclean hands" on the theory that Hall was Pullins' lawyer, knew about the condition precedent in the Stockholders Agreement, but nevertheless attempted to persuade and coerce Pullins to sell him the 10,000 shares, notwithstanding Pullins' inability to receive approval from the corporation and Saugatuck. Finally, as to the fraud count, defendant asserts a statute of limitations defense.
The case was tried to the court, and based on listening to the witnesses and examining the exhibits, the following is a summary of the pertinent facts. Hall had done legal work for Pullins for a number of years and they were social friends as well. Pullins did tell Hall in August 1984 that he was agreeable to transferring 10,000 of his approximately 565,000 shares of class B common stock to Hall, his friend and lawyer, in exchange for legal services rendered by Hall in connection with the formation of Sentinel, and a promissory note for $1771. Both parties, however, including the plaintiff, realized and understood that the consent of Sentinel was required to effectuate a sale. In reality this meant the approval of Saugatuck, and specifically that of its managing partner and principal, Frank J. Hawley, Jr.[1]
Pullins never signed any writing agreeing to a sale of his stock, although Hall asked him several times over the course of the next several years to do so. Sentinel's stock is subject to restrictions imposed by the Stockholders Agreement. The company must approve any sale of its stock. In addition, the stock proposed to be sold must first be offered to Sentinel, and if Sentinel does not wish to purchase CT Page 3702 it, the stock must then be offered to Saugatuck.[2] Hall, who advised Pullins at the time the Stockholders Agreement was negotiated and executed, was aware of this restriction.[3] Although Pullins did make a bona fide attempt to gain the approval of Saugatuck, such approval was refused, and Hawley testified that it would have been contrary to his policy to bring in any new shareholders, other than investors and employees.[4]
Hall did prepare and sign a promissory note for $1771, and did deliver it to Pullins in June of 1986, almost two years after the discussion of the transfer of Sentinel stock had first occurred. Pullins, however, never agreed in writing to the sale, and in a letter of July 9, 1987, he told Hall that he could not obtain Saugatuck's approval for the sale, but added that if there was some legal manner to accomplish the transfer, Pullins remained willing to try.[5] Hall then suggested that he be given an option to purchase the stock whenever the restriction concerning approval by Sentinel and Saugatuck had expired, but Pullins never agreed to this.
Applying the law to these facts, I draw the following conclusions. First, an agreement for the sale of stock must be in writing in order to be enforceable, and since Hall and Pullins' verbal understanding was never reduced to writing, it follows that the plaintiff cannot prevail in this suit. Second, even if a sale of stock under the circumstances of this case does not require a writing, the sale was subject to a condition or restriction which was never satisfied, and therefore judgment must enter for the defendant.
Regarding defendant's statute of frauds defense, the applicable provision is set forth in the Uniform Commercial Code, General Statutes 42a-8-319.[6] The statute requires that to be enforceable a contract for the sale of securities be in writing, unless one of the exceptions applies.
No evidence was presented of any writing confirming this sale. The only writing from Pullins was to the effect that he could not sell the Sentinel stock to Hall for the reason that he was unable to obtain permission from Saugatuck.
As to the statutory exceptions of payment, confirmation or admissions contained in the statute of frauds, none appears to be applicable in this case. Where a party fully performs his obligation on a contract for the sale of securities by rendering services, the contract falls outside the statute of frauds because payment will have been made for the securities. Burns v. Gould, 172 Conn. 210,220-21, 374 A.2d 193 (1977). It is true that Hall had provided legal services to defendant in the past, but it has long been held that in order for performance to take a case out of the statute of frauds "[t]he acts done in part performance . . . must be such as are necessarily to be imputed to the agreement, and should be done solely CT Page 3703 with a view to the identical agreement being performed that is sought to be enforced." Lester v. Kinne, 37 Conn. 9, 14 (1870). See also Van Epps v. Redfield, 69 Conn. 104, 109-10 (1897), and Verzier v. Convard,75 Conn. 1, 6-8, 52 A. 255 (1902). The conduct must be such as cannot "in the ordinary course of human conduct, be accounted for in any other manner than as having been done in pursuance of a contract." Verzier, supra, 7. Hall had already performed some legal services by the fall of 1984, which were not in furtherance of the contract referred to in the complaint, that is, the sale of Sentinel stock by Pullins.
As to the other exceptions, there was no written confirmation of the oral agreement, nor was there any admission by Pullins of Hall's claim, other than that he was agreeable to selling Hall 10,000 shares of his stock of Sentinel, but only if it could be accomplished in accordance with the requirements of the Stockholders Agreement, i.e., consent by Saugatuck, the other stockholder of Sentinel. Pullins' letter of July 9, 1987, was not a clear and unequivocal admission of an unconditional contract by any means, but was quite the opposite since it referred to the need to gain Saugatuck's approval. Because there was no writing agreeing to the sale in the first instance, no payment, including no payment of the $1771 note, no confirmation of the sale, nor any admission by Pullins of an unconditional agreement to sell stock to the plaintiff, the statute of frauds bars plaintiff's claim. Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 187,510 A.2d 972 (1986)("[u]nder 42a-8-319, a party may not enforce a contract that is subject to the statute of frauds without presenting specified written evidence of the existence of a contract").
Even if a writing is not required, plaintiff's claim fails since the parties did not have a meeting of the minds that Pullins would sell 10,000 shares of his Sentinel stock without qualifications or conditions. In other words, the defendant did not agree to be bound unconditionally. The necessity of approval by a third party indicates that a term of the agreement was left open, and a binding contract was not created. I believe that both parties realized and understood that the proposed transfer, to which Pullins was perfectly amenable, required prior approval of Hawley on behalf of Saugatuck. This consent requirement constituted a condition precedent to the consummation of the sale. Pullins attempted in good faith to obtain the necessary consent but was unsuccessful, thereby terminating any obligation on his part to sell some of his stock to the plaintiff.
A "condition precedent" to the formation of a valid contract arises "[w]here something remains to be done or must occur before judicial enforcement of a particular promise is possible. . . ." Hartford Federal Savings Loan Assn. v. Green, 36 Conn. Sup. 506,513, 412 A.2d 709 (App. Sess. 1979). According to Calamari and Perillo, Contracts, 11-5, at 439-40 (3rd ed.): "A condition precedent is an act or event, other than a lapse of time, which must exist or occur before a duty to perform a promised performance CT Page 3704 arises. If the condition does not occur and is not excused, the promised performance need not be rendered. For example, if A has promised for a consideration to pay B $100 if a specified ship arrives in port before a certain date, A's duty to pay does not arise unless and until the ship arrives. If the ship does not arrive within the time specified, A need not keep his promise." In this case Pullins' agreement to transfer 10,000 shares of his stock to the plaintiff was conditioned upon obtaining approval of Sentinel and Saugatuck, and since this approval was not obtained, Pullins, like A, "need not keep his promise."
Because plaintiff has failed to sustain his burden of proving that Pullins had agreed unconditionally to sell the 10,000 shares of Sentinel, and also because the defendant Pullins has proved his special defense of the statute of frauds, judgment must enter for the defendant.[7]
As to the second count, claiming fraud, since no binding unconditional contract came into being, the plaintiff did not prove that defendant made fraudulent misrepresentations.
Accordingly, judgment shall enter for the defendant, with costs to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 14 day of April, 1992.
WILLIAM B. LEWIS, JUDGE