475 P.2d 522

REALTY EXCHANGE CORPORATION, an Arizona corporation, and Evelyn Nathanson, Appellants and Cross-Appellees,

v.

CADILLAC LAND AND DEVELOPMENT COMPANY, an Arizona corporation, Harry Gelt and Jerome Smith, Appellees and Cross-Appellants.

No. 1 CA–CIV 1061.

Court of Appeals of Arizona, Division 1.

Oct. 19, 1970.

Rehearing Denied Dec. 10, 1970.

Review Denied Jan. 26, 1971.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by James A. Teilborg, Phoenix, for appellants and cross-appellees.

Johnson, Himelstein & Timbanard by Jeffrey R. Timbanard, Phoenix, for appellees and cross-appellants.

HATHAWAY, Judge.

Appellants sued for a real estate brokers' commission and were awarded a judgment against Cadillac Land and Development Company, but the judgment was denied against Gelt and Smith personally; consequently, this appeal and cross-appeal.

The plaintiffs-appellants' position is that the trial court erred in refusing to set aside the transfer of assets from the defendant, Cadillac Land Company, to the individual defendants and directors of the corporation, Harry Gelt and Jerome Smith, and further erred in refusing to apply the "Trust Fund" doctrine entitling plaintiffs to levy upon those assets to the extent necessary to satisfy their judgment against the corporation.

In 1959, Harry Nathanson was President of Realty Exchange, acting as designated broker. Harry Gelt and Jerome Smith were the sole stockholders and officers of Cadillac Land and Development Company. Gelt and Smith became interested in a block of land in Mohave County, comprised of between 35,000 and 38,000 acres. Gelt and Nathanson conferred concerning the land and reached an understanding that Nathanson's organization, Realty Exchange, would seek a purchaser. Apparently, a transaction was contemplated whereby Cadillac Land would purchase the land and simultaneously re-sell it, deriving whatever benefit could be gained by the transaction with a minimum of liability ex-

posure. Realty Exchange was to receive a $41,500 commission, being 5% of the sales price of $830,000.

Nathanson negotiated a sale of most of the land to Tarle Investment Corporation. The resulting transaction was such that Cadillac Land was able to employ funds received in the simultaneous sale to Tarle to pay Cadillac Land's cash obligation on the purchase. Cadillac Land was also provided an immediate release of portions of the acreage amounting to approximately four sections. Cadillac Land's agreement to purchase provided that it would not be responsible to the seller, in the event of a default, beyond forfeiture of Cadillac Land's interest in the unreleased acreage.

On appeal, appellants first contend that the trial court erred in refusing to invoke the "Trust Fund" doctrine against Gelt and Smith as transferees of the assets of Cadillac Land, contending that said corporation was left insolvent by virtue of the transfer. The "Trust Fund" doctrine is stated in Fletcher's Cyclopedia, Corporations, Vol. 3, Chapter 11, § 1186, p. 899, as follows:

"Independently of statute, if corporate officers divide the assets among stockholders when the corporation is insolvent or where the corporation is thereby rendered insolvent, such officers are personally liable for corporate debts, or at least to the extent of the amount of assets received by them."

The appellants contend that the indebtedness of Cadillac Land to Realty Exchange was incurred in 1959 in the amount of $41,500; that this liability is reflected in the corporate journals; and that Mr. Toback, the Cadillac Land accountant, confirmed that the commission was set up on the corporate books as payable at the rate of $8,300 each year, principal, together with interest, and that the trial court obviously found the debt to be valid and subsisting by virtue of the judgment rendered in behalf of Realty Exchange.

In Valley Bank v. Malcolm, 23 Ariz. 395, 204 P. 207 (1922), the court looked to American Ry. Express Co. v. Commonwealth, 190 Ky. 636, 228 S.W. 433 (1920), for a statement of rules concerning the "Trust Fund" doctrine. There, the court stated the general rule that a purchasing corporation will be made responsible for the liabilities of the selling corporation if there was no consideration for the sale, or if it was not made in good faith. The court continued:

"It is equally well settled that when the sale is a *bona fide* transaction, and the selling corporation receives money to pay its debts, or property that may be subjected to the payment of its debts and liabilities, equal to the fair value of the property conveyed by it, the purchasing corporation will not, in the absence of a contract obligation or actual fraud of some substantial character, be held responsible for the debts or liabilities of the selling corporation."

In the instant case, the court found that no fraud existed. In considering this finding and the allegations raised on appeal, some further detail of the transaction complained of is necessary. Approximately a year and a half after the sale to Tarle Investment Co., Cadillac sold the released lands. Over a year after the sale of these released lands, sometime in January or February, 1963, Cadillac sold its vendor's interest in these lands to Gelt and Smith. This is the sale appellants complain of.

Gelt and Smith had solicited and received offers on the property—one for $14,630.45, another for $13,500. Cadillac Land was already indebted to Gelt and Smith for $5,000 advanced by them. Gelt and Smith decided to buy Cadillac's interest and in consideration therefor, cancelled the $5,000 indebtedness and transferred 4,690 shares of Real Site stock, which had been received by them for land worth in excess of $27,000. Gelt and Smith also assumed any tax deficiency of the corporation which might be revealed through a pending audit and as a result paid $5,821.11 in taxes for Cadillac. Mr. Harold Toback, a CPA and accountant for Cadillac, testified that

Cadillac was solvent and had net assets over liabilities of $17,490.28 on August 31, 1963. Appellees contend that Cadillac Land is still solvent and doing business in Arizona.

The entire block of land acquired by Cadillac appears to have been encumbered by a reservation of grazing rights to Senator Smith. Extensive and prolonged litigation concerning the reservation resulted in a decision favorable to Senator Smith. Phoenix Title & Trust Company v. Smith, 101 Ariz. 101, 416 P.2d 425 (1966). As a result, the land transferred to Tarle Trust became relatively worthless, but not in 1963 as intimated by plaintiffs. Rather, this resulted 3 years later with the advent of Phoenix Title & Trust Company v. Smith, supra. The property, subject of the conveyances complained of herein, did not become worthless because the subsequent transferees purchased the grazing rights.

Appellants contend that the appellees failed to establish the market value of the Real Site stock given in exchange for the Mohave County trusts. As we have previously set forth in detail evidence tending to establish the value of this stock, we do not find merit in this contention. However, it would appear that evidence is lacking concerning the value of the land received, or at best, the evidence is vague in that regard. In any event, the burden is upon the parties contending that the property is held in trust in fraud of creditors to establish that by clear and convincing evidence. Sackin v. Kersting, 105 Ariz. 464, 466 P.2d 758, reh. den. 105 Ariz. 566, 468 P.2d 925 (1970).

Appellants next contend that the trial court committed error in failing to set aside the transaction where Gelt and Smith obtained from the corporation beneficial interest in the five trusts. Appellants claim that this transaction depleted Cadillac Land of all its assets. However, appellants had no standing to challenge this transaction.

"The doctrine which prevents directors from binding a corporation by a contract in which they have an interest adverse to that of the corporation does not, of itself, give the creditors of the corporation the right to attack such a transaction in cases where the corporation or its stockholders could attack it. The fiduciary relation existing between the corporation and the directors does not authorize creditors to attack a transfer regardless of the fairness or unfairness of the transaction, but, in order that they may impeach it, they must show that the corporation was insolvent at the time of the transaction, or that it was entered into with intent to hinder, delay or defraud them." Fletcher's Cyclopedia, Corporations, Vol. XV(a), p. 135.

As shown earlier, appellants have proved neither fraud nor the insolvency of the corporation. To permit creditors to interfere in the inner workings of corporations, without showing fraud or danger of insolvency, would unduly hamper the operation of the businesses. Corporations would be reluctant to borrow because in doing so they would be forfeiting part of their control to their creditors.

Appellants' last argument is that it was error for the successor judge, on appellees' motion, to strike from the first judge's (who died during the proceedings) partial judgment the words "attempted to." The portion in question of the partial judgment read:

"* * * and further it appearing to the Court that the Defendant, CADILLAC LAND AND DEVELOPMENT COMPANY, has ~~attempted to~~ RSS assign its interest in Trusts No. 3118, No. 3529–A, No. 3529–B, No. 3913, No. 4340 and No. 3530 to the Defendants, HARRY GELT and JEROME SMITH, and it further appearing to the Court that there is a controversy existing between the Plaintiffs and the Defendant, CADILLAC LAND AND DEVELOPMENT COMPANY, INC., as to whether or not such writ of garnishment is prior to the purported assignment by the Defendants, * * *."

Appellants contend that the words "attempted to" were used because the first judge did not intend to imply that the assignment of the trusts from Cadillac Land Corporation to Gelt and Smith was effective on the date borne thereon and did not intend to imply a finding of priority with regard to the assignment and writ of garnishment.

In the partial judgment the trial court specifically found against Realty Exchange on their charge that there was no consideration for the assignment. Where a trial court made no findings of fact or conclusions of law, and none were requested, we will assume that the trial court made all necessary findings essential to support the judgment, Bud Antle, Inc. v. Gregory, 7 Ariz.App. 291, 438 P.2d 438 (1968). Since the first judge found against Realty Exchange's charge of no consideration, he necessarily concluded that there was consideration, that the execution of the assignment was valid, and that Gelt and Smith had full ownership of the trusts as of the date marked thereon. The deleted words were properly stricken.

Appellee, Cadillac Land Corporation, has filed a cross-appeal which first asserts that the lower court erred in holding that escrow instructions and a trust agreement signed by Cadillac Land Corporation, but which the broker was not a party to, were sufficient memoranda to satisfy the Statute of Frauds, A.R.S. § 44–101. The Statute of Frauds as it pertains to brokers and owners of realty is to protect against claims backed only by oral testimony which could be fabricated. Cross-appellant criticizes Maricopa Realty and Trust Company v. V. R. D. Farms, Inc., 10 Ariz.App. 524, 460 P.2d 195 (1969) which held that a formal listing requirement was not required where the subject matter of the commission agreement is stated with reasonable certainty in other memoranda. We adhere to our position stated in Maricopa Realty and Trust, supra, and find that the escrow instruments are a sufficient memorandum of the parties' agreement.

Appellee's next argument on cross-appeal is that if "the escrow instruments and trust" are sufficient memorandum under the Statute of Frauds, then the lower court erred in refusing to reform the trust agreement where there was mutual mistake by both parties or where one party committed unilateral mistakes coupled with inequitable conduct by the other party. We will view the evidence in a light most favorable to sustaining judgment of trier of fact. McFadden v. Wilder, 6 Ariz.App. 60, 429 P.2d 694 (1967). We will not disturb the findings and judgment of the trial court where there is evidence from which reasonable men could draw the same conclusions as the trial court. Bass Investment Co. v. Banner Realty, Inc., 103 Ariz. 75, 436 P.2d 894 (1968). The lower court was in a position to judge the credibility of the witnesses. "Clear, convincing and satisfactory proof" is required before reformation of a contract will be granted. Ashton Co., Inc. v. State, 9 Ariz.App. 564, 454 P.2d 1004 (1969). We cannot say that the trial judge was wrong in concluding that this burden was not met.

Judgment affirmed.

HOWARD, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.