A91A1129. ALKARIL CHEMICALS, INC. v. O'LENICK.
(414 SE2d 257)

BIRDSONG, Presiding Judge.

Alkaril Chemicals, Inc. ("Alkaril") appeals from the judgment of
the trial court, based upon a jury verdict, in favor of Anthony J.
O'Lenick, Jr., on his claim that Alkaril breached a contract to pay a
performance bonus. Alkaril denies that any such contract was agreed
upon and asserts that the trial court erred by denying its motions for
a directed verdict and for judgment n.o.v. on grounds related to the
existence or the enforceability of the promise. Alkaril also asserts the
trial court erred by denying its motions regarding the award of attor-
ney fees and expenses of litigation. *Held*:

1. "In determining whether the trial court erred by denying ap-
pellants' motion for a directed verdict and motion for judgment n.o.v.,
this court must view and resolve the evidence and any doubt or ambi-
guity in favor of the verdict. A directed verdict (and judgment n.o.v.)
is not proper unless there is no conflict in the evidence as to any ma-
terial issue and the evidence introduced, with all reasonable deduc-
tions therefrom, *demands* a certain verdict." (Citations and punctua-
tion omitted.) *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3
(392 SE2d 268).

The evidence considered most strongly to support the verdict
shows that for several years O'Lenick and other Alkaril key manage-
ment employees received a management incentive bonus from Alkaril
in addition to their regular salaries. These bonuses were based on a
percentage of pre-tax profits and were paid the year following the
year in which the profits were earned after the company's books were
audited.

The bonuses were a year-to-year program which was subject to
termination or modification by Alkaril. The usual procedure was that,
after consultation with Alkaril's owner in the last quarter of the year,
O'Lenick would announce the bonus plan agreed upon for the next
year. This was done by a memorandum from O'Lenick, as president

of Alkaril, to each employee participating in the plan. The memorandum would announce the percentage of profits the recipients of the memorandum would receive and any other provisions of the plan. For example, the bonus plan for 1987 required that participants in the plan be employed by Alkaril at the end of the year to receive a bonus.

In 1987, GAF Chemicals Corporation ("GAF") purchased all of Alkaril's stock, and a GAF vice president became O'Lenick's supervisor. According to O'Lenick's testimony and the document in the record, in November of 1987, O'Lenick sent his supervisor at GAF a memo stating that in accordance with their earlier discussions, the 1987 bonus plan would continue in 1988 and the plan participants would receive the percentage of the profits stated in the memorandum. O'Lenick also testified that, when he received no objection from his supervisor, he issued memoranda in November of 1987 to the participating managers announcing the plan for 1988. The plan announced for 1988 in these memoranda, however, did not contain the 1987 requirement that participants be employed for the full year to collect their bonus.

In August of 1988, O'Lenick received a promotion within GAF which would require him to move to New Jersey, but in November he refused the promotion and voluntarily left the company. Thereafter, when GAF refused to pay the bonus, he sued to collect.

Based upon this evidence, it is clear the agreement O'Lenick seeks to enforce was reached in November of 1987, but the bonus would not be paid until, at the earliest, January of 1989. Accordingly, as this agreement was not to be performed within one year from its making, to be binding it must be in writing and signed by the party to be charged. OCGA § 13-5-30 (6).

Although O'Lenick argues the agreement should be enforced because it was partially performed (OCGA § 13-5-31 (3)), this argument is based upon his performance of his duties as president of Alkaril in such a manner that Alkaril earned the profits which would entitle him to the bonus. Such performance, however, is not sufficient part performance to remove an oral agreement from the requirements of OCGA § 13-5-30 (6) unless the part performance is "consistent with the presence of a contract and inconsistent with the lack of a contract." *Hudson v. Venture Indus.*, 243 Ga. 116, 118 (252 SE2d 606). In this instance the record does not reveal such evidence. Further, the record shows that O'Lenick was compensated for his performance as he received raises in his annual salary of $8,000 in March, 1988, another raise of $17,000 in August, 1988, and if he had remained employed with GAF, he would have participated in GAF's bonus plan for executives of his level. Therefore, O'Lenick's work did not constitute part performance within the meaning of OCGA § 13-5-31 (6).

Moreover, even if this November 1987 oral agreement were en-

forceable, O'Lenick's testimony showed that if there were an agreement, it was to continue the 1987 bonus plan. Since the 1987 plan required that a participant be employed by Alkaril for the full calendar year, O'Lenick was not entitled to a bonus under the plan because he voluntarily ended his employment with Alkaril before the end of the year. See *Foreman v. Eastern Foods*, 195 Ga. App. 332, 334 (393 SE2d 695). Although O'Lenick argues that the 1987 plan's requirement for employment for the full year was a one-time provision, this contention is not supported by his testimony or the memorandum he sent to his GAF supervisor. Moreover, nothing in the record shows that O'Lenick was authorized to deviate from the 1987 bonus plan. Therefore, even if the November 1987 oral agreement to continue the 1987 plan in 1988 were binding, O'Lenick still would not be entitled to recover. *Foreman v. Eastern Foods*, supra.

Further, while O'Lenick asserts that his memorandum to himself is a sufficient writing to comply with the requirements of OCGA § 13-5-30 (6), this argument is also without merit. He is not the party to be charged under the contract (see OCGA § 13-5-30) and, as stated above, his memorandum to himself deviated in a significant way from the oral agreement of November 1987. Moreover, he produced no evidence that he was authorized to modify the plan or issue the memoranda.

As the party claiming the existence of an agreement, O'Lenick had the burden of proving its existence and its terms. *Jackson v. Easters*, 190 Ga. App. 713, 714 (379 SE2d 610). Based upon the evidence presented at trial, he failed to carry his burden.

Accordingly, the trial court erred by denying Alkaril's motion for judgment n.o.v. and the judgment for O'Lenick must be reversed.

2. In view of our disposition of O'Lenick's contract claim, his award for attorney fees cannot stand. *Baxley-Veneer &c. Co. v. Maddox*, 261 Ga. 309, 311 (404 SE2d 554).

*Judgment reversed with direction that the trial court enter judgment for appellant. Pope and Cooper, JJ., concur.*

DECIDED NOVEMBER 21, 1991 —
RECONSIDERATION DENIED DECEMBER 11, 1991 — 

*Elarbee, Thompson & Trapnell, Joseph M. Freeman*, for appellant.

*Russell, Adamson & Stell, Robert W. Adamson*, for appellee.