165 P.3d 674

**Hal OWENS, a married man dealing with his sole and separate property, Plaintiff/Counterdefendant, Appellee,**

v.

**M.E. SCHEPP LIMITED PARTNERSHIP, an Arizona partnership, Defendant/Counterclaimant, Appellant.**

**No. 1 CA–CV 06–0162.**

Court of Appeals of Arizona, Division 1, Department E.

Aug. 23, 2007.

Perkins, Coie, Brown & Bain, P.A. by Jordan L. Green, Phoenix, Attorneys for Plaintiff–Counterdefendant, Appellee.

Fennemore Craig, P.C., Roger T. Hargrove, Roger T. Hargrove, Phoenix, Attorneys for Plaintiff–Counterdefendant, Appellee.

McCabe O'Donnell, P.A. by Joseph I. McCabe, Jr., Clifford J. Roth, Phoenix, Attorneys for Defendant–Counterclaimant, Appellant.

## OPINION

BARKER, Judge.

¶ 1 M.E. Schepp Limited Partnership ("Schepp Partnership") appeals from entry of partial summary judgment ordering statutory partition of residential property in which it owns an undivided interest as a tenant in common with Hal Owens. It contends the court erred by failing to find issues of fact concerning the existence and enforceability of an oral, voluntary partition agreement. For the reasons that follow, we agree and accordingly reverse.[1]

### *Facts and Procedural History*

¶ 2 The parties to this lawsuit own undivided interests as tenants in common in Lots 17, 18 and 20, contiguous parcels of residential property located in Phoenix, Arizona. Hal Owens possesses a two-thirds interest and Schepp Partnership possesses a one-third interest. Lots 17 and 18 are vacant; a residence and guest house are located on Lot 20. The co-managing partners of Schepp Partnership are brothers Rex and Thomas Schepp, Hal's cousins. Thomas resides in the home on Lot 20, and the guest house is rented to third parties.

¶ 3 Hal initiated this lawsuit in May 2005, seeking partition of the lots pursuant to Arizona Revised Statutes ("A.R.S.") section 12–1211 to –1225 (2003), and an accounting for rents and profits. Schepp Partnership answered and counterclaimed for specific performance of an alleged voluntary partition agreement or, alternatively, damages for a purported diminution in value of Lots 17 and 18 caused by Hal's removal of mature trees from those lots.

¶ 4 Hal filed a motion for partial summary judgment on the counterclaim and for appointment of commissioners to begin the process of statutory partition. Schepp Partnership filed a response in opposition to the motion, contending in relevant part that statutory partition was not available to Hal because he had entered in the voluntary partition agreement. After oral argument on the motion, the court granted partial summary judgment for Hal, ordering statutory partition and appointment of commissioners, and dismissing the counterclaim for specific performance. Significantly, the court ruled that "[t]here was never an agreement as to how the property is to be divided between the parties."

¶ 5 Following the disposition of post-hearing motions, the court entered judgment, and Schepp Partnership filed a timely notice of appeal. We have jurisdiction over an interlocutory partition judgment pursuant to A.R.S. § 12–2101(H) (2003).

¶ 6 We review de novo the trial courts partial summary judgment, viewing the evidence in the light most favorable to Schepp Partnership as the non-prevailing party. *Myers v. City of Tempe,* 212 Ariz. 128, 130, ¶ 7, 128 P.3d 751, 753 (2006); *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.,* 189 Ariz. 178, 180, 939 P.2d 811, 813 (App. 1997). The court properly entered partial summary judgment for Hal if no genuine issues of material fact existed and he was entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

### *Discussion*

¶ 7 Schepp Partnership first argues that the trial court erred by entering partial summary judgment for Hal because genuine issues of disputed material fact regarding the existence of an enforceable agreement to partition the lots precluded summary judgment. As Schepp Partnership correctly

---

1. By separate unpublished decision filed this date, we address an additional issue raised on appeal that is not relevant to our analysis in this opinion and does not meet the standards for publication set forth in Arizona Rule of Civil Appellate Procedure 28(b). *Fenn v. Fenn,* 174 Ariz. 84, 85, 847 P.2d 129, 130 (App.1993).

notes, voluntary agreements to partition real property are controlling over involuntary partition proceedings. *McCready v. McCready*, 168 Ariz. 1, 3, 810 P.2d 624, 626 (App.1991) (noting that in absence of an agreement of cotenants to divide property, the only method of doing so is statutory involuntary partition proceeding); A.R.S. § 12–1224(A) ("The provisions of this article [relating to involuntary partition] shall not preclude partition in any other manner authorized by law."). Thus, if there was a dispute of fact concerning the existence and enforceability of such an agreement, partial summary judgment was improper.

¶ 8 Hal does not contest that the existence of a voluntary partition agreement would trump his right to obtain involuntary partition. Rather, he asserts that partial summary judgment was appropriate because the undisputed evidence demonstrates the parties never reached an agreement for voluntary partition. Alternatively, he contends any agreement was unenforceable under the statute of frauds, A.R.S. § 44–101 (2003). We address each contention in turn.

## I. *Existence of Partition Agreement*
### A.

■ ¶ 9 A contract is formed when there is "a bargain, consisting of promises exchanged, and consideration." *Schade v. Diethrich*, 158 Ariz. 1, 8, 760 P.2d 1050, 1057 (1988). Viewing the evidence in the light most favorable to Schepp Partnership, we conclude that a reasonable jury could find the existence of a bargained-for exchange and consideration.

¶ 10 In July 2004, Hal met with Thomas and Rex at the Duck and Decanter restaurant to discuss the lots and, specifically, a City of Phoenix notice requiring clean-up of those lots. During this meeting, in addition to discussing clean-up issues, Hal said he wanted to remove a row of mature, 65–foot tamarack trees along the northern edge of Lots 17 and 18. Thomas objected, saying the neighbors would be upset. Hal responded that he would decide what to do because he was taking Lots 17 and 18 and leaving Lot 20 to Schepp Partnership. Hal also said words to the effect that because Schepp Partner-

ship would be getting the more valuable lot, "it might cost you some money." The parties then agreed to divide the lots in this manner but did not reach agreement on any equalization payment. Thomas and Rex understood, however, that Hal might make a future claim for such payment.

¶ 11 Shortly after this meeting, Thomas heard the crack of a tree being removed on Lot 18 by an excavator hired by Hal. Thomas rushed to the site and confronted Hal about what he was doing to the trees. Hal declared that because he had paid a great deal of money for the two lots, the choice to remove the trees was his alone. During that discussion, Hal drew a diagram in the dirt showing the placement of a proposed house for his family centered on Lots 17 and 18 and the location of various trees to be planted on those two lots. Hal and Thomas then agreed a second time that Hal would take Lots 17 and 18 and Schepp Partnership would take Lot 20. Based on this agreement to split the lots, Thomas allowed Hal to remove the mature trees. Schepp Partnership later paid Hal $16,600, one-third of the total removal cost, as compensation to Hal in light of Schepp Partnership's receipt of the more valuable Lot 20.

¶ 12 According to Thomas, he would have taken steps to stop removal of the trees to prevent permanent damage to Lots 17 and 18 had it not been for the agreement to split the lots. He claims the tree removal was not necessary to comply with the City of Phoenix clean-up notice and that the understanding reached with Hal was not an ordinary maintenance agreement between co-owners.

¶ 13 In August 2004, Schepp Partnership asked its attorney to memorialize the partition agreement in a written agreement. Upon completion, the partnership sent the agreement to Hal for execution, but he returned it unsigned objecting to the lack of an equalization payment provision. Hal proposed that Schepp Partnership pay him $233,333 and grant him an access easement as equalization. The parties negotiated in the ensuing months but never reached agreement regarding whether Hal was entitled to additional compensation in light of the great-

er value of Lot 20. Consequently, the parties never executed a written agreement.

¶ 14 The above recited evidence would allow a reasonable jury to find that in July 2004 the parties agreed to partition the property by giving Lots 17 and 18 to Hal and Lot 20 to Schepp Partnership. Consideration existed as the parties agreed to relinquish their undivided interests in all three lots in order to obtain sole ownership of specific lots.

■ ¶ 15 An enforceable contract, however, must also be reasonably certain and definite. *Id.* at 8–9, 760 P.2d at 1057–58. One focus of dispute in this appeal is whether the parties' purported agreement was sufficiently certain and definite in light of their undisputed failure to resolve whether Hal was entitled to additional compensation. Schepp Partnership contends that the parties' failure to reach agreement on whether Hal was entitled to compensation does not preclude enforceability of the agreement because the court can supply that term. Hal responds that whether he was entitled to payment and, if so, the amount of such payment was an essential element of the proposed agreement that cannot be supplied by the court. Thus, because the parties did not arrive at a meeting of the minds on this term, Hal contends the parties never reached an agreement.

■ ¶ 16 The requirement of reasonable certainty and definiteness exists to ensure that the parties intended to be bound by an agreement. *Id.* at 9, 760 P.2d at 1058 ("The requirement of reasonable certainty of terms arises from the inescapable fact that the uncertainty of the promises may indicate that a proposal or acceptance was not intended to be understood as a binding offer or acceptance."). Consequently, agreements leaving material terms for future resolution can be enforceable nevertheless if the parties sufficiently manifested mutual assent to be bound by those agreements. *Id.* (holding oral agreement to award employee a "fair and equitable" severance package in exchange for resignation and additional limited employment enforceable). The overarching inquiry is whether the parties intended to contract. *Id.*

¶ 17 This court's decision in *AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 848 P.2d 870 (App.1993), is instructive. In that case, Indian Construction Services ("ICS") submitted a bid to serve as general contractor for a construction project. *Id.* at 293, 848 P.2d at 872. ICS's bid was based in part on a telephonic bid by AROK Construction Company, a subcontractor who had worked with ICS previously, to perform drywall and stucco work on the project for $1.549 million. *Id.* Prior to the bid closing for selection of the general contractor, AROK agreed to reduce its bid to $1.4 million if ICS agreed to award the drywall and stucco work to AROK if ICS was the successful bidder. *Id.* ICS responded that if it got the job AROK would get the job. *Id.* ICS was later awarded the general contractor job, but a dispute arose between it and AROK regarding the agreed-upon subcontract price. *Id.* ICS maintained that AROK had agreed to further reduce its price to $1.3 million while AROK maintained its price at $1.4 million. *Id.* The parties failed to resolve the dispute, and ICS subcontracted with other parties to perform the drywall and stucco work. *Id.*

¶ 18 AROK sued ICS asserting multiple causes of action, including breach of contract. *Id.* at 294, 848 P.2d at 873. The trial court granted summary judgment for ICS, ruling as a matter of law that no contract existed between the parties because essential terms, such as manner and time of payments, time for completion, penalty provisions, and bonding, were omitted from the agreement. *Id.* at 293, 296, 848 P.2d at 872, 875.

■ ¶ 19 This court reversed, holding that a triable issue of fact existed regarding the parties' intent to contract. *Id.* at 295, 848 P.2d at 874. We reasoned that "absent or uncertain terms are not fatal to the enforceability of an otherwise binding contract." *Id.* at 297, 848 P.2d at 876. Instead, extrinsic evidence can be used to establish the meaning of the parties' agreement and supply omitted terms. *Id.* at 298, 848 P.2d at 877. The court explained,

> The fact that the parties have left some matters to be determined in the future should not prevent enforcement, if some

method of determination independent of a party's mere 'wish, will, and desire' exists, either by virtue of the agreement itself or by commercial practice or other usage or custom.

*Id.* at 297, 848 P.2d at 876 (quoting Arthur L. Corbin, *Corbin on Contracts* § 95, at 400–402 (1963) [hereinafter "Corbin"] ).

¶ 20 The court concluded that whether an agreement resolves every matter is not the touchstone for enforceability. *Id.* Rather, the terms of an agreement are sufficiently certain to enforce "if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.* (quoting Restatement (Second) of Contracts § 33(2) (1981) [hereinafter "Restatement"] ). The *court then determined that the agreement between ICS and AROK was sufficiently cer*tain because (1) the agreement provided the court with a basis for determining ICS's breach (scope of work) and provided a remedy (agreed-upon price), and (2) the parties' prior course of dealing involved use of a standard form contract that could be used to supply missing terms. *Id.* at 298, 848 P.2d at 877.

### B.

¶ 21 Bearing the above-described principles in mind, for the reasons below we determine that sufficient evidence exists to allow a reasonable jury to conclude the parties mutually assented to be bound by a *partition agreement despite the uncertainty* of Hal's entitlement to an equalization payment and the amount of any such payment. First, the agreement reached by the parties provides a basis for determining the existence of a breach and for fashioning an appropriate remedy. Specifically, the agreement sets forth the manner of dividing the lots so that either party's failure to honor that division would result in a breach. *See id.* at 297, 848 P.2d at 876. The court could fashion an appropriate remedy for any breach by ordering partition in the manner agreed upon by the parties.

¶ 22 Second, the parties' actions evidence their intent to be bound by the partition agreement. "[T]he actions of the parties may show conclusively that they have intend-

ed to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. *In such cases, courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." Schade,* 158 Ariz. at 9, 760 P.2d at 1058 (quoting Restatement § 33(3) cmt. a).

¶ 23 After the July 2004 meeting at Duck and Decanter, Hal exercised exclusive control over Lots 17 and 18 by removing the row of mature trees against the wishes of Schepp Partnership. After removal of the trees, Hal installed fencing on Lots 17 and 18, made other unidentified improvements to the lots, brought two horses to the lots, and regularly maintained the lots by trimming the grass and weeds. In turn, Schepp Partnership allowed Hal to remove the trees and paid one-third of the removal cost as an equalization payment. Finally, at a hearing before the City of Phoenix held in March 2005 regarding an ordinance violation, Thomas informed a hearing officer in Hal's presence and without objection that Hal was responsible for cleaning up Lots 17 and 18 and Schepp Partnership was responsible for cleaning up Lot 20. These actions support a finding that the parties began performance of the agreement, thereby evidencing their intent to be bound by it. *Id.* at 10, 760 P.2d at 1059 (quoting Corbin § 95, at 407 (1963) (alteration in original)) (" 'The fact that one of [the parties], *with the knowledge and approval of the other,* has begun performance is nearly always evidence that they regard the contract as consummated and intend to be bound thereby.' "); *Althaus v. Cornelio,* 203 Ariz. 597, 601, ¶ 17, 58 P.3d 973, 977 (App. 2002) (same); Restatement § 34(2) (providing that part performance of agreement may establish that an enforceable contract has been formed).

¶ 24 Third, extrinsic evidence exists to supply the omitted term concerning Hal's entitlement to additional compensation as an equalization payment. Pursuant to accepted commercial practice in valuing real property, the court can order the lots appraised. Applying the parties' respective undivided interests in·the lots to the appraised values, the court can then precisely determine the amount due each party. If the lot division

does not coincide with these figures, the court can order an equalization payment. *See Triangle Constr. v. City of Phoenix*, 149 Ariz. 486, 491, 720 P.2d 87, 92 (App.1985) (holding that the court could supply a "reasonable" price to fill omitted price term). An example, using valuation figures urged by Hal prior to initiation of the lawsuit, best illustrates the ease of determining Hal's entitlement to an equalization payment and its amount:

| Lot 17 | - | $ 500,000 |
| Lot 18 | - | $ 700,000 |
| Lot 20 | - | $ 950,000 |
| Total | - | $2,150,000 |

| Schepp Partnership's 1/3 share: | $ 716,667 |
| Hal's 2/3 share: | $1,433,333 |

Equalization payment due Hal: $233,333 (difference between 2/3 share and value of Lots 17 and 18)

The trier-of-fact can further determine whether any equalization payment due Hal must be adjusted in light of Schepp Partnership's payment of $16,600 to the tree-removal company.

¶ 25 Hal argues that the court cannot supply any needed equalization term because the parties did not leave the issue of compensation for future resolution like the parties in *Schade* and *AROK* but instead expressly disputed Hal's entitlement to any compensation. *See AROK*, 174 Ariz. at 296, 848 P.2d at 875 (deeming it significant that ICS did not contend contract never formed because parties expressed disagreement about specific terms). We disagree. Thomas and Rex both avowed in affidavits that at the conclusion of the meeting at Duck and Decanter, they understood that Hal might make a future claim for payment based on his belief that Lot 20 had a greater value. Despite the lack of agreement on this issue, according to Thomas and Rex, the parties agreed to the split. Thus, a jury could conclude that at the time of the creation of the agreement, Schepp Partnership did not dispute Hal's entitlement to compensation but instead reserved that issue for future resolution. Moreover, after Hal removed the trees, Schepp Partnership paid $16,600 to the removal company as an alleged equalization

payment to Hal. This evidence further militates against a finding that the partnership expressly disputed Hal's entitlement to an equalization payment.

¶ 26 Hal relies on the parties' post-agreement negotiations and ultimate inability to agree on his entitlement to additional compensation as conclusively establishing the parties' failure to arrive at a meeting of the minds. But nothing prevented the parties from continuing to negotiate whether Hal was entitled to any compensation in addition to the $16,600. *See Schade*, 158 Ariz. at 11, 760 P.2d at 1060 (acknowledging parties had opportunity to agree on what was "fair and equitable" severance as reflected in agreement before turning to court to resolve).

¶ 27 In summary, we hold that Schepp Partnership presented sufficient evidence, justifying a trial, that the parties entered a voluntary partition agreement in July 2004 despite the lack of agreement regarding Hal's entitlement to additional compensation as an equalization payment. In light of our determination, we need not address the partnership's additional arguments regarding the existence of a partition agreement, including its contention that the trial court erred by denying its motion to continue the summary judgment proceedings to permit further discovery regarding indicia of Hal's assertion of exclusive ownership over Lots 17 and 18.

## II.  Statute of Frauds

### A.

¶ 28 Hal contends that even assuming the existence of an oral partition agreement, the trial court properly granted partial summary judgment because the agreement was unenforceable under the statute of frauds, A.R.S. § 44–101. That statute provides in relevant part as follows:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:
>
> . . . .

6. Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein.

Hal asserts that an agreement for partition is one for the "sale" of an interest in real property and thus falls within § 44–101(6), while Schepp Partnership adopts the opposite view. Whether an agreement to partition real property falls within the statute of frauds has not been decided in Arizona, and jurisdictions have reached different conclusions. *See generally* H.A. Wood, Annotation, *Parol Partition and the Statute of Frauds,* 133 A.L.R. 476 (1941).

¶ 29 To determine whether the legislature intended agreements for partition to fall within the statute of frauds, "we first review the statutes language." *Calmat of Ariz. v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993). Schepp Partnership properly notes that a "sale" transfers title from one person to another by a contract of sale while a "partition" of real property divides the interests of common owners. Black's Law Dictionary 1141, 1339 (7th ed.1999). As Hal contends, however, division of interests in real property necessarily requires mutual transfers of those interests. Additionally, as in this case, such transfers can be made in exchange for an equalization payment. Thus, agreements to partition arguably can constitute agreements for sale. In order to glean whether the legislature intended to include agreements for partition within § 44–101(6), we invoke secondary rules of statutory construction. *Fuentes v. Fuentes,* 209 Ariz. 51, 55, ¶ 12, 97 P.3d 876, 880 (App.2004). After doing so, we conclude that such agreements are subject to the statute of frauds.

¶ 30 First, in the absence of contrary authority or policy, we give weight to principles set forth in the Restatement. *See Barnes v. Outlaw,* 192 Ariz. 283, 285, ¶ 6, 964 P.2d 484, 486 (1998) ("We are not bound by the Restatement.... Moreover, although we generally follow the Restatement absent statutes or case law to the contrary, we will not do so blindly."); *Cannon v. Dunn,* 145 Ariz. 115, 116, 700 P.2d 502, 503 (App.1985) ("we do not follow the Restatement blindly"); *Burns v. Davis,* 196 Ariz. 155, 161–62, 993 P.2d 1119,

1125–26 (App.1999) ("When the law is not settled on a particular subject, we look to the Restatement with favor."). The Restatement provides that "[a] contract by joint tenants or tenants in common to partition land into separate tracts for each tenant is within the Statute of Frauds." Restatement § 128(2). The comment explains that such agreements fall within the statute of frauds because "partition agreements have the effect of an agreement to convey land." Restatement § 128, cmt. a; *see also* 9 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 25:5 (4th ed. 1999) ("It would seem on principle that an oral contract for partition would be unenforceable, since it necessarily involves an attempted conveyance or promise to convey land....").

¶ 31 Second, the Restatement view complements decisions from our courts, which have interpreted § 44–101(6) broadly to apply to transfers of interests in real property. Thus, our courts have concluded that gifts of real property are equivalent to a "sale" and therefore fall within the statute of frauds. *Stewart v. Damron,* 63 Ariz. 158, 164, 160 P.2d 321, 324 (1945) ("A parol gift of land may be said to be upon the same footing as a parol sale of land."); *see also Tenney v. Luplow,* 103 Ariz. 363, 368, 442 P.2d 107, 112 (1968) ("Parol gifts of land are within the Statute of Frauds...."); *Long v. City of Glendale,* 208 Ariz. 319, 329, ¶ 35, 93 P.3d 519, 529 (App. 2004) (holding oral donation of land within statute of frauds as "[t]he statute of frauds precludes a party from bringing a court action to enforce an unwritten agreement for the transfer of an interest in real property."). Similarly, we have held that a contract to provide a mortgage falls within the statute of frauds as a "sale" of an interest in real property. *Fremming Constr. Co. v. Sec. Sav. & Loan Ass'n,* 115 Ariz. 514, 516, 566 P.2d 315, 317 (App.1977) (citation omitted) (noting that the term "sale" in § 44–101(6) is "inexact" and concluding contract to provide mortgage "is equivalent in effect to a promise to sell ... such an interest").

¶ 32 Third, and finally, interpreting § 44–101(6) as including partition agreements furthers the purpose of the statute of frauds. *J.L.F. v. Ariz. Health Care Cost Contain-*

*ment Sys.,* 208 Ariz. 159, 162, ¶ 15, 91 P.3d 1002, 1005 (App.2004) (citations omitted) (acknowledging that if statutory language is unclear we consider other factors, including spirit and purpose of provision). By enacting § 44–101(6), the legislature chose to protect against fraudulent, oral claims for the transfer of interests in real property. *See Realty Exch. Corp. v. Cadillac Land & Dev. Co.,* 13 Ariz.App. 232, 236, 475 P.2d 522, 526 (1970) ("The Statute of Frauds as it pertains to brokers and owners of realty is to protect against claims backed only by oral testimony which could be fabricated."). Because fraudulent claims for a division of interests can occur between tenants in common, no reason appears to treat partition agreements differently than traditional sales agreements for purposes of the statute of frauds. *Cf. Turley v. Ethington,* 213 Ariz. 640, 646–47, ¶¶ 22, 24, 27, 146 P.3d 1282, 1288–89 (App.2006) (quoting 4 Caroline N. Brown, *Corbin on Contracts* § 17.12, at 467, 468 (1997)) (holding that the statute of frauds does not apply to a partner's agreement to transfer interest in real property to partnership because the Uniform Partnership Act recognizes oral partnership agreements and "provides adequate protection from fraudulent or mistaken claims of other partners, leaving little necessity for the protection of the statute of frauds," but partnership's agreement to transfer real property interest to partner is within statute of frauds because Uniform Partnership Act does not provide similar protection in this instance).

¶ 33 For all these reasons, we hold that an agreement to partition real property constitutes an agreement for sale of an interest in real property for purposes of the statute of frauds, A.R.S. § 44–101(6).

### B.

¶ 34 Our inquiry regarding the enforceability of the agreement at issue, however, continues as Schepp Partnership contends the statute of frauds was satisfied here by a collection of writings. We disagree.

¶ 35 An agreement satisfies the statute of frauds if some memorandum [of the agreement] ... is in writing and signed by

the party to be charged, or by some person by him thereunto lawfully authorized. A.R.S. § 44–101. Writings may be considered collectively to satisfy this requirement and may be informal and addressed to a third party. *Custis v. Valley Nat'l Bank of Phoenix,* 92 Ariz. 202, 205, 375 P.2d 558, 561 (1962). Additionally, the party-to-be-charged need only sign one of several documents setting forth the terms of the agreement if the signed document actually or apparently refers to the unsigned writing. *Del Rio Land, Inc. v. Haumont,* 118 Ariz. 1, 6, 574 P.2d 469, 474 (App.1977); *Favour v. Joseff,* 16 Ariz.App. 470, 475, 494 P.2d 370, 375 (1972).

¶ 36 Schepp Partnership contends that two letters signed by Hal and his attorney after Hal refused to sign the written partition agreement, together with Hal's dirt diagram of his future home centered on Lots 17 and 18, constitute writings sufficient to satisfy the statute of frauds. We disagree. Neither letter confirms that Hal and Schepp Partnership entered a partition agreement. Indeed, both letters reflect Hal's refusal to abide by the purported agreement while indicating his willingness to further negotiate. As to the dirt diagram, we do not consider it to be a "writing" under the statute of frauds. The purpose of the writing requirement is to preserve evidence of the agreement. *See Sherwood v. Lowell,* 34 Cal.App. 365, 167 P. 554, 559 (1917) ("The object of the statute of frauds is to preserve, in the most certain, definite, and enduring form, evidence of the terms [of] ... certain specified kinds of transactions...."); *Kingan & Co. v. Silvers,* 13 Ind.App. 80, 37 N.E. 413, 414 (1894) ("The purpose [of the statute of frauds] was to preserve and perpetuate the evidence of the contract."). A drawing in the dirt, which was not preserved in any fashion, does not satisfy this purpose. For these reasons, we conclude no writings exist sufficient to satisfy the statute of frauds.

### C.

¶ 37 Schepp Partnership also asserts that the parties' part performance of the partition agreement removed it from the statute of frauds. Hal does not dispute that

part performance can remove an oral agreement from the ambit of the statute of frauds, but he argues the exception does not apply in this case. We agree with Schepp Partnership that summary judgment was inappropriate on this issue.

¶ 38 Part performance, an equitable doctrine grounded on principles of estoppel, is a well-established exception to the statute of frauds. *Long*, 208 Ariz. at 329–30, ¶ 36, 93 P.3d at 529–30; *Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy*, 20 Ariz.App. 122, 125, 510 P.2d 752, 755 (1973) *disavowed on other grounds by Gibson v. W.D. Parker, Trust*, 22 Ariz.App. 342, 345, 527 P.2d 301, 304 (1974). To merit the exception, the party seeking to enforce the oral agreement must first prove acts constituting part performance of the contract. *Simons v. Simons*, 134 Idaho 824, 11 P.3d 20, 23 (2000) ("The acts constituting part performance must be proven by clear and convincing evidence...."); *Van Epps v. Redfield*, 69 Conn. 104, 36 A. 1011, 1012 (1897) ("[The plaintiff] must first prove acts [of part performance] done by [the plaintiff]...."). What the act is that provides the basis for part performance may present a question of fact. *Pearsall v. Henry*, 153 Cal. 314, 95 P. 159, 160 (1908) ("The question whether there has been a part performance of the oral agreement is necessarily one of fact to be determined by the trial court."). Once the acts of part performance are determined (either by trial if contested, or as a matter of law if undisputed), the court must determine as a matter of law whether such acts unequivocally refer to the oral agreement. *Gene Hancock*, 20 Ariz.App. at 125, 510 P.2d at 755 ("The sufficiency of the particular acts to constitute part performance can be decided as a matter of law."); *see also Boesiger*, 381 P.2d at 804 ("What constitutes part performance must depend upon the particular facts of each case and the sufficiency of particular acts is a matter of law."); *Van Epps*, 36 A. at 1012 (stating that the trial court's finding that the part performance was "reasonably and naturally accounted for by the existence of an oral agreement" was not a finding of fact binding on the reviewing court). The term "unequivocally referable" means that the act of part performance does not "admit[ ] of explanation without reference to the alleged oral contract."[2] *Gene Hancock*, 20 Ariz.App. at 125, 510 P.2d at 755. Thus, to survive summary judgment, Schepp Partnership must set forth a genuine issue of fact as to the existence of an act of part performance that unequivocally refers to the alleged oral agreement.

¶ 39 Viewing the evidence in the light most favorable to Schepp Partnership, *see Myers*, 212 Ariz. at 130, ¶ 7, 128 P.3d at 753, we find that there is a genuine issue of material fact as to whether there is an act of part performance in this case that, as a matter of law, would refer unequivocally to the alleged oral

2. Other courts have described the term "unequivocally referable" in various ways. *See Pearsall*, 95 P. at 160 ("Some of them say that, to constitute part performance, the acts relied on must be referable exclusively to the oral contract, but, as we understand it, this means no more than in the light of all the circumstances of the particular case such acts are so referable.") (citation omitted); *Unitas v. Temple*, 314 Md. 689, 552 A.2d 1285, 1291 (1989) (quoting 2 A. Corbin, *Corbin on Contracts* § 430 (1950)) ("It is believed that the principal idea that is struggling for expression is that the part performance must be clearly evidential of the existence of a contract—it must be such as would not ordinarily have taken place in the absence of a contract and therefore is not reasonably explicable on some other ground."); *Rutt v. Roche*, 138 Conn. 605, 87 A.2d 805, 807 (1952) ("The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute."); *Alkaril Chem.* *Inc. v. O'Lenick*, 202 Ga.App. 230, 414 S.E.2d 257, 259 (1991) ("the part performance [is not sufficient unless it] is consistent with the presence of a contract and inconsistent with the lack of a contract") (internal citations omitted); *Wolske Bros., Inc. v. Hudspeth Sawmill Co.*, 116 Idaho 714, 779 P.2d 28, 29–30 (Ct.App.1989) ("The exception protects a party who demonstrates reliance upon an oral contract by acts that would not have been done but for the contract."); *Davis v. Davis*, 261 Iowa 992, 156 N.W.2d 870, 877 (Iowa 1968) ("plaintiff has not proven any facts fairly and reasonably accounted for in no other way than by the existence of this alleged oral agreement"); *Jones v. Jones*, 219 Ala. 62, 121 So. 78, 78 (1929) (stating that an act is exclusively referable to an oral agreement if "an outsider, knowing all the circumstances attending it save only the one fact, the alleged oral contract, would naturally and reasonably infer that some contract existed relating to the land, of the same general nature as the contract alleged") (citations omitted).

agreement. When viewed in a light most favorable to Schepp Partnership, the facts show the following: (1) The parties agreed that Hal would take lots 17 and 18, Schepp Partnership would take 20, and Schepp Partnership would pay one-third of the removal cost of the trees. (2) Thomas did not want the trees removed, claiming that the removal of the trees reduced the value of Lots 17 and 18 and was not required to comply with city ordinances. (3) When Hal began to cut down the sixty-five foot tamarack trees, Thomas objected.[3] (4) Thomas withdrew his objection and permitted Hal to remove the tamarack trees when Hal agreed that Schepp Partnership would take Lot 20 and Hal would take Lots 17 and 18.

¶ 40 The act of withdrawing the objection to cutting down the tamarack trees is unequivocally referable to the oral partition agreement. *See Gene Hancock,* 20 Ariz.App. at 125, 510 P.2d at 755. The act of permitting Hal to remove the trees, after having objected that very day and before, does not "admit of explanation without reference to the alleged oral contract."[4] *Id.* Further, Thomas and Rex believed, prior to the removal of the trees, that the removal reduced the value of Lots 17 and 18. Thus, the act of permitting a reduction in value for lots 17 and 18 is also only explainable by reference to the oral agreement.

¶ 41 We find further support in *Burns v. McCormick,* 233 N.Y. 230, 135 N.E. 273 (1922), an opinion written by Judge Cardozo setting forth the basis for the part perform-ance exception. The court in *Burns* stated, "There must be part performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership." *Id.* at 232, 135 N.E. 273. To illustrate the principle, Judge Cardozo states that a "buyer who not only pays the price, but possesses and improves his acre, may have relief in equity without producing a conveyance." *Id.* at 232–33, 135 N.E. 273. The relief is appropriate because the buyer's "conduct is itself the symptom of a promise that a conveyance will be made." *Id.* at 233, 135 N.E. 273. Similarly, Schepp Partnership's act of withdrawing its objection and permitting the removal of the trees is "unintelligible or at least extraordinary" if not considered unequivocally referable to the alleged oral partition agreement to convey 20 to Schepp Partnership. *Id.* at 232, 135 N.E. 273. Schepp Partnership's acts are a "symptom of a promise that a [partition] will be made." *Id.* at 233, 135 N.E. 273.

¶ 42 In summary, we hold that an oral partition agreement is a "sale" of an interest in real property for purposes of the statute of frauds, A.R.S. § 44–101(6). The doctrine of part performance, however, may apply as a defense to the statute. On remand, the trier of fact must resolve the factual dispute as to what acts of part performance took place. If the contested facts as to the acts of part performance are resolved in Schepp Partnership's favor, as asserted in ¶ 39 herein, then, as a matter of law, the acts unequivocally

**3.** In Thomas's affidavit he stated, he "rushed over" to the lot where the trees were being cut down, "asked [Owens] what he was doing to the trees," and told him that "the neighbors would be upset when they saw he was tearing out the trees." Furthermore, this act occurred after a meeting in which Thomas told Owens that "he should not take down the tamarack trees." Describing the event, Thomas stated that he "would have chained [him]self to the tamarack trees or pulled the operator from the excavator to prevent permanent damage to Lots of which [he] was a co-owner." The Dissent says that "we inaccurately state" there was an objection and that we have "recast" the facts in this light. *Infra* ¶ 48 n. 7. We do not misstate any fact; we only view the facts, as we must, in the light most favorable to the position that Schepp Partnership takes. *Myers,* 212 Ariz. at 130, ¶ 7, 128 P.3d at 753. In this sense, we must "recast" the facts in the light most favorable to Schepp Partnership and the Dissent errs when it does not do so. This is particularly so with regard to the *act* of the withdrawal of the objection; not some *hypothetical reason* for withdrawal, as the Dissent postulates. *See infra* ¶ 49 (speculating that Thomas could have changed his mind when all the facts in the record are to the contrary).

**4.** In *Gene Hancock,* we focused on the acts of part performance of the party seeking to enforce the alleged oral agreement. 20 Ariz.App. at 125, 510 P.2d at 755. Other courts have held that the acts of part performance must be done by the party seeking to enforce the oral agreement. *Rutt,* 87 A.2d at 807 (Connecticut); *Van Epps,* 36 A. at 1012 (Connecticut); *Williams,* 95 U.S. at 457 (United States Supreme Court).

refer to the oral partition agreement. The statute of frauds, in that circumstance, is not a defense to the oral partition agreement alleged here.[5]

### Conclusion

¶ 43 For the foregoing reasons, we reverse summary judgment in favor of Hal and remand this matter for further proceedings. As the prevailing party, Schepp Partnership is entitled to costs on appeal following submission of a statement of costs in accordance with Rule 21(a), Arizona Rules of Civil Procedure.

CONCURRING: PHILIP HALL, Presiding Judge.

TIMMER, Judge, dissenting.

¶ 44 Although the Majority correctly states that the part-performance exception to the statute of frauds requires acts "unequivocally referable" to the oral contract, my colleagues misapply that principle by failing to consider whether Schepp Partnership's alleged acts of part performance standing alone are unequivocally referable to the oral partition agreement rather than as colored by Hal's purported promises. For this reason, I respectfully dissent.

¶ 45 In assessing whether an act is "unequivocally referable" to an oral agreement, the court must examine only the act itself to make this determination, disregarding any explanation provided by the party attempting to enforce the agreement. As Judge Cardozo stated:

'An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance.' *What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done.*

*Burns*, 135 N.E. at 273 (citation omitted) (emphasis added); *see also* 73 Am.Jur.2d *Statute of Frauds* § 321 (May 2007) (to same effect). This court agreed with this reasoning in *Gene Hancock Construction*, concluding that acts of part performance must be "exclusively referable" to the oral agreement. 20 Ariz.App. at 125, 510 P.2d at 755.[6]

¶ 46 The "act" cited by the Majority as Schepp Partnership's part performance of the oral partition agreement is not an affirmative action, but forbearance from action, making application of the part-performance exception improbable. *See Williams v. Heller Bros. Realty*, 229 Va. 55, 326 S.E.2d 661, 662 (1985) ("Obviously, forbearance to act is less probative of an antecedent agreement than affirmative action."); *Beall v. Beall*, 291 Md. 224, 434 A.2d 1015, 1019 (1981) ("If the part performance asserted consists wholly of forbearance to act, the fact is less likely to be evidential in character than when it consists of affirmative action." (citing 2 Corbin on Contracts § 430, at 473–74)). Specifically, Hal removed trees from lots 17 and 18 and

---

5. Because we are reversing the judgment, we need not address Schepp Partnership's argument that the trial court should have included "equitable principles" in making its decision.

6. Many other courts have held that whether acts are unequivocally referable to an oral agreement turns solely on an examination of the acts themselves. *See, e.g., Payne v. Warren*, 282 Ga.App. 524, 639 S.E.2d 528, 530 (2006) (deciding that although sale of tract of land consistent with the oral extension of contract for multiple tracts, sale of tract not part performance of oral extension as sale not inconsistent with the lack of an extension agreement); *Brooks v. Cooksey*, 427 S.W.2d 498, 505 (Mo.1968) (concluding plaintiff's act in voting defendant's shares at stockholders' meeting not part performance of defendant's agreement to sell shares as number of reasons exist to give a proxy); *Alvarez v. Alvarez*, 72 N.M. 336,

383 P.2d 581, 585 (1963) (" 'An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance.' " (quoting *Woolley v. Stewart*, 222 N.Y. 347, 118 N.E. 847, 848 (1918)), *generally approved of in Gene Hancock Constr.*, 20 Ariz.App. at 125, 510 P.2d at 755; *Pair v. Rook*, 195 Va. 196, 77 S.E.2d 395, 400 (1953) (" 'Until acts are alleged which, of themselves, imply the existence of such a contract, parol evidence to show its terms is inadmissible.' " (quoting *Plunkett v. Bryant*, 101 Va. 814, 45 S.E. 742, 743 (1903))); *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530, 533 (1948) ("Every act of plaintiff may be explained quite separate and apart from any alleged oral contract and no act is 'unequivocally referable' thereto.")).

Schepp Partnership did not intervene. *Supra* ¶ 40. This event is not "unequivocally referable" to the partition agreement because it is also explained by the parties' cotenancy relationship. Said differently, Schepp Partnership's acts were not inconsistent with the lack of a partition agreement and were therefore not "unequivocally referable" to such an agreement. *Payne*, 639 S.E.2d at 530 ("[T]o remove the contract from the operation of the Statute of Frauds, '*the part performance shown must be consistent with the presence of a contract and inconsistent with the lack of a contract.*'" (quoting *Francis v. Thomas*, 129 Tex. 579, 106 S.W.2d 257, 260 (App.1937))).

¶ 47 As a cotenant in Lots 17 and 18, Hal had the right to use and enjoy the property as if he were the sole owner, provided he did not prejudice Schepp Partnership's use and enjoyment of the lots. *Jackson v. Low Cost Auto Parts, Inc.*, 25 Ariz.App. 515, 516, 544 P.2d 1116, 1117 (1976); 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 41 (May 2007) ("Any cotenant of real property generally has a right to enter upon the common estate and to take possession of the whole."). Hal's removal of the trees, Thomas' lack of objection, and Schepp Partnership's subsequent payment of its proportionate share of the removal can be explained as the act of one cotenant improving the property with contribution by the other cotenant. 86 C.J.S. *Tenancy in Common* § 92 (June 2007) (providing one cotenant may make improvements and compel consenting cotenant to pay share). In other words, the actions of Hal and Schepp Partnership are reasonably explained by the parties' relationship as cotenants in the property. The inquiry should end there.

¶ 48 The Majority, however, recasts the tree-removal episode as part performance of the oral agreement by focusing on Thomas' explanation for not objecting to Hal's acts.[7] *Supra* ¶ 40. According to the Majority, no other explanation for Thomas' change-of-heart exists except his performance of the agreement, particularly as the brothers believed the tree removal would devalue the lots. *Id.* But by considering Schepp Partnership's explanation for Thomas' acquiescence rather than the act itself, the Majority incorrectly allows Hal's promises to "give significance to what is done." *Burns*, 135 N.E. at 275.

¶ 49 Additionally, plausible explanations exist for Thomas to permit the tree removal. For example, Thomas could have changed his mind about the need for the removal or acquiesced to the removal in anticipation that Hal and Schepp Partnership would finalize a partition agreement that deeded exclusive title in Lots 17 and 18 to Hal. The existence of alternative reasons for Thomas' act defeats a finding of part performance. *See Gene Hancock Constr.*, 20 Ariz.App. at 124, 125, 510 P.2d at 754, 755 (holding as matter of law that buyer's acts in obtaining financing and having costly engineering studies made of subject property in reliance on alleged oral sales agreement did not constitute part performance, implicitly concluding these acts did not by themselves evidence an agreement); *MH Inv. Co. v. Transamerica Title Ins. Co.*, 162 Ariz. 569, 574, 785 P.2d 89, 94 (App.1989) (holding escrow agent's acts in closing multiple escrows in reliance on oral agreement not unequivocally referable to that agreement despite agent's reported reliance on alleged oral agreement because closings also explained by reference to written escrow instructions); *Williams*, 326 S.E.2d at 662 (holding tenant's forbearance from engaging in competition with other tenants in commercial strip center not part performance of landlord's agreement not to lease to competing businesses; plausible explanations exist for tenant's forbearance unrelated to alleged agreement).

¶ 50 The provision of the statute of frauds applicable to transfers of interests in real

---

7. The Majority inaccurately states that, "[w]hen Hal began to cut down the sixty-five foot tamarack trees, Thomas objected" and then withdrew that objection the same day. *Supra* ¶¶ 39, 40. In his affidavit presented to the trial court with the summary judgment papers, Thomas did not say he expressed any objection to Hal about the tree removal. Rather, he told Hal only that the neighbors would be upset about the loss of the trees. Even viewing the evidence in the light most favorable to Schepp Partnership, Thomas' words cannot be construed as an expressed objection to Hal's actions.

property "was adopted for the express purpose of preventing existing estates in land from being upset by parol evidence...." *Coleman v. Coleman,* 48 Ariz. 337, 344, 61 P.2d 441, 444 (1936). Today's decision so expands the part-performance exception to the statute of frauds, I fear that the requirement for a writing to evidence a transfer of interest in real property can now be easily overcome, leading to the very mischief sought to be prevented by the statute of frauds. I would affirm.